Nov. Term,
1861.

HARVEY and Others *v.* SMITH.

HARVEY
v.
SMITH.

Suit by *A.*, against *B.*, *C.* and *D.*, to recover damages for false and fraudulent representations in the sale of a newspaper establishment. The complaint averred that the defendants being the owners and publishers of a certain daily and weekly newspaper, and the owners of the printing presses, type, &c., used in publishing the same, offered to sell to the plaintiff the right to publish said paper, together with the good will, patronage, and subscription list of said establishment, as well as the fixtures and property of every kind belonging to said office; and to induce him to buy the same, defendants did then and there falsely and fraudulently represent to plaintiff that the number of paying subscribers to the daily paper exceeded three hundred, and that the number of paying subscribers to the weekly paper was at least one thousand; when, in truth and in fact, the number of paying subscribers to said daily paper did not exceed one hundred and thirty-seven, and the number of paying subscribers to said weekly paper did not exceed six hundred. That defendants further falsely and fraudulently represented that the subscription list and advertising patronage of the daily paper paid the entire expense of the establishment, leaving the subscription list and advertising patronage of the weekly paper clear profit; all of which statements were false, and known to be so by the defendants at the time, &c.; that the plaintiff relying upon said representations, purchased said paper, &c. After verdict for the plaintiff, the Court ordered the damages found by the jury to be taken and treated as a credit upon the notes given by the plaintiff for the paper, and remaining unpaid, and that the notes to that amount should be surrendered.

*Held*, that the number of subscribers to the paper, and the amount of the business and profits of the establishment were material considerations inducing the purchase.

*Held*, also, that the representations were such as the buyer had a right to rely upon, the matters concerning which they were made being peculiarly within the knowledge of the seller.

*Held*, also, that there was no error in the order made by the Court directing the judgment to be credited on the outstanding notes.

*Friday,*
*December 6.*

APPEAL from the *Knox* Circuit Court.

WORDEN, J.—This was an action by *Smith*, the appellee, against the appellants, to recover damages for false and fraudulent representations alleged to have been made by the defendants to the plaintiff, on the sale by them to him of a newspaper establishment. Demurrer to the complaint overruled, and exception. Issue; trial; verdict and judgment for the plaintiff.

In the brief of counsel for the appellants, three points are relied upon for a reversal. *First*, That the complaint was insufficient. *Second*, That the evidence did not sustain the verdict; and, *Third*, That the kind of judgment rendered, was unauthorized.

The complaint is quite lengthy, but enough of it will be set out to present the ground of objection. It is alleged that on, &c., at the county of *Knox*, "the defendants, under the name and style of *Harvey, Mason & Co.*, were joint owners and partners in a certain newspaper and printing establishment in the city of *Vincennes*, known as the *Vincennes Gazette*, which said newspaper the defendants before and at that time published and issued to subscribers daily, at the rate of six dollars per annum, and weekly at the rate of two dollars per annum, per copy; and in connection therewith, had before and at that time done and performed various kinds of advertising and job work. And the said defendants being then and there desirous of selling their right to publish and issue said paper, daily and weekly, as also the good will, subscription list and patronage of said *Gazette* establishment, as also all the privileges, rights, appurtenances, tools, materials, fixtures, furniture, and property of every name, nature, description and kind, used and appertaining, and in any wise belonging to said *Gazette* establishment, and before and at that time employed and used in and about said office, offered to sell the same as aforesaid to the said plaintiff; and to induce the plaintiff to become the purchaser thereof, did falsely and fraudulently say and represent to the plaintiff, that the number of paying subscribers to the daily *Gazette* exceeded three hundred; and that the number of paying subscribers to the weekly *Gazette* was at least one thousand; when, in truth and in fact, the said representations were false and fraudulent, and well known to said defendants so to be at the time they were made, in this, that the number of paying subscribers to said daily *Gazette* did not exceed, at that time, one hundred and thirty-seven, and the number of paying subscribers to said weekly *Gazette* did not exceed six hundred. And, as the plaintiff further states, the said defendants did then and there falsely

Nov. Term, 1861.

HARVEY
v.
SMITH.

represent to the plaintiff, that the subscription list and advertising patronage of the daily *Gazette* paid the entire expenses of the *Gazette* establishment, leaving the subscription list and advertising patronage of the weekly *Gazette* clear profit; all of which said statements were false, and so known to be by said defendants at the time they were made.

And the said defendants then and there represented that they had, about four years before that time, purchased the *Gazette* establishment at a cost of four thousand dollars, and that they had afterward purchased the " *News of the Day*" printing office, at a cost of fifteen hundred and fifty dollars, and had also purchased twelve to fourteen hundred dollars' worth of new material, all of which they had paid for from the profits of said *Gazette* establishment, and had also drawn therefrom the sum of six thousand dollars in cash, and had then owing to them about five thousand dollars, all from the profits of said establishment; all of which representations as to the profits, patronage, business, and subscription list of said *Gazette* printing office, were false, and well known by the defendants to be false, at the time they were made. And the plaintiff, relying upon the truth of the representations aforesaid, did then and there become the purchaser of said *Gazette* establishment, the good will, subscription list, &c. of the said *Harvey, Mason & Co.*, at and for the sum of four thousand and five hundred dollars. And the plaintiff avers that the presses, types, fixtures, and furniture, and materials of every description and kind, were then and there worth not to exceed two thousand dollars, and that the only consideration for the remainder of said purchase money, to wit: twenty-five hundred dollars, was the good will, subscription list, and patronage of the *Gazette* establishment, and the right to publish and issue said paper. And the plaintiff avers that while he could examine for himself the presses, materials, type, furniture, and property of the said *Gazette* establishment, he could derive no information as to the expense of said printing establishment, or as to the number of subscribers to the daily or weekly paper, or as to the amount of advertising or job work of said establishment, and the profits they had realized therefrom, except from the

defendants themselves, the plaintiff then and there being a physician, and not familiar with such business, and the costs of conducting the same, or the profits arising therefrom, as the defendants well knew; and that the plaintiff did not know any thing of the manner in which the defendants kept their accounts of receipts or expenditures, or whether any such accounts were kept, separate from their other business; and the plaintiff states that he is informed and believes that the defendants did not keep their books in such manner as would have enabled him to determine the truth or falsity of the representations as to the business income and profit of said *Gazette* establishment, prior to that time; and the plaintiff further states that he would not have made said purchase if he had not believed said representations as to subscriptions, advertising, job work, &c., and the profits arising therefrom to be true, as the defendants then and there well knew. And the plaintiff further avers that said false and fraudulent representations were made in pursuance of a previous fraudulent combination between the members of said firm of *Harvey, Mason & Co.*, to deceive and defraud the plaintiff."

The complaint alleges that the plaintiff, at the time of the purchase, paid the defendants the sum of fifteen hundred dollars thereon, and executed to them his notes for the remaining three thousand dollars, and a mortgage on the establishment to secure the payment thereof.

The objections made to the complaint may be best gathered from the following extract from the brief of counsel for the appellants:

"It will be observed that the complaint does not charge that the defendants made any false or fraudulent representations to the plaintiff as to the quantity, quality, or condition of any materials of the *Gazette* office, sold by them to him; but only that the subscription list was not, in point of fact, as large as the defendants represented it to be; and that they had not done as much business, enjoyed as much patronage, or made as much money, during the time that they had owned and conducted the *Gazette* office, as they pretended that they had.

"We submit, that in order to constitute fraud by false representations, it must appear that the false representations were made with reference to a material fact, constituting a substantial inducement to the contract, and upon which the party had a right to rely. 2 Kent's Com., p. 488; 2 Parsons on Contracts, p. 270. Were these representations, though false, of such a character? We think not, for the following reasons: The plaintiff had no interest in knowing whether the *Gazette* office had, or had not, been a source of profit to the defendants; such profits, if any were made by the defendants, were not, by the terms of the contract, to be shared by the plaintiff. The losses, if any were suffered by the defendants, the plaintiff did not have to bear. He therefore had no interest in knowing any thing about the patronage or profits which the defendants had enjoyed in conducting the *Gazette* office; he would neither make nor lose any thing, whether the statements of the defendants with reference to such patronage and profits were true or false; consequently, the representations of which the plaintiff complains were of matters in which he had not, and could not have, any interest, and were, therefore, as to him, wholly immaterial. The question with the plaintiff, when he was negotiating for the purchase of this press, was not what the defendants had realized out of the subject matter of the contract, but what could he make? what patronage could he secure? The representations of the defendants, of which the plaintiff complains, did not even remotely tend to solve that question; for his success, both in securing patronage and in realizing profits, depended upon the skill, energy, and ability which he could employ in conducting the *Gazette* office, not upon the patronage, popularity, or skill of the defendants. This patronage, depending, as it necessarily did, upon the business ability, integrity and popularity of the defendants, could not be transferred to *Smith;* it could not be the subject of bargain, so as to compel the patrons of the defendants to become the patrons of the plaintiff; hence, even a false representation of the extent of such patronage did not injure *Smith*, and can not, therefore, be a ground of complaint for fraud. He purchased the *Gazette* office, with the right to publish the

'*Vincennes Gazette*,' and the right to secure the patronage of those who had been the former patrons of the defendants, and any others he could secure. This right is all that the defendants could sell, and all that the plaintiff could buy. That right has not been disturbed, and he ought not now to complain that he has been cheated, when he has got, and is now enjoying, all that he could purchase, or the defendants could sell.

"The plaintiff, however, insists that inasmuch as by the express terms of the contract he purchased the subscription list, the false representations of the defendants as to the number contained in that list were material, and therefore fraudulent. We answer, that the subscription list was but a part of the patronage of the office, and could not be transferred. The defendants could and did transfer to the plaintiff the right to publish the *Gazette*, and to vend it to all the world, including of course the former subscribers to the paper; but they could not transfer the subscribers; to do that would require their consent to the bargain. This proposition, we think, cannot be gainsayed. Every man has a right to choose his own paper, as a teacher for himself and family. The material of which the paper is composed, the type, ink, &c., is not the newspaper. The subscriber to a paper does not look to that; he looks to the learning, integrity and ability of the editor; he looks to the moral, political and social teachings of the paper, and he judges from that whether such a paper is a fit companion and teacher for his children. It is the brain work of the editor he buys, and not the material of the paper. The relation, therefore, which exists between the publisher of a newspaper and the subscribers, can not, for these and many other reasons which will readily occur to any one, be transferred by the former; and could not, therefore, form any material part of the consideration of the sale of this office. The plaintiff could and did purchase the material for, and the right to publish, a newspaper; a vehicle through which he could publish and vend his own peculiar moral, political, social and religious views; but he could not compel those who subscribed to the *Gazette*, as published by the defendants, to accept that

paper as edited and published by himself. It necessarily follows, we think, that a representation of the defendants as to the extent of their subscription list, though false, could not injure the plaintiff; and can not, therefore, be a subject for a suit for damages.

"In order, however, to show that the representations complained of in this case were of material matters, and the proper subject of a suit for fraud, the plaintiff relied in the Circuit Court upon two authorities. The case of *Shaeffer* v. *Sleade*, 7 Blackf. p. 178, and *Gatling* v. *Newell et al.*, 9 Ind. 572. These authorities, however, in our judgment, clearly do not sustain him. In both of these cases, the thing sold (in the former case it being some wax figures, and in the latter a patent right for a wheat drill,) had no intrinsic value, and was valuable only for the public favor it enjoyed. The wax figures were valuable as a show, and that depended upon the skill and ingenuity displayed in their construction. The talents, energy and learning of the owner had nothing to do with, and could not enhance, that value. The same may be said of the patent right for the wheat drill. Hence, in those cases, the true measure of the value of the subject of the contract was the public favor with which they were received; and false representations as to the extent of that public favor, were adjudged fraudulent. But the case in hand is widely different. The patronage of the *Gazette* did not depend upon the skill displayed in the construction of the press, type, or other materials of the newspaper; but upon the learning, skill, character, &c., of the editor and publisher. These qualities the plaintiff does not pretend were included in his purchase from the defendants."

We regard the complaint as sufficient.

Although the defendants could not transfer to the plaintiff the patrons of the establishment, yet it is evident that the number of subscribers to the paper, and the amount of the business and profits of the establishment, were material considerations inducing the purchase. The patrons of the establishment might, to be sure, withdraw their patronage; but, in publishing a newspaper, as well as in most other enterprises there is a material difference between obtaining

new patronage and retaining that already bestowed upon the Nov. Term, establishment. The case of *Dobell* v. *Stevens*, 10 E. C. L. R. 1861. 201, is directly in point here. There the defendant was possessed of a lease for a term of years, of premises in which he kept a public house. In a treaty with the plaintiff for the purchase of the lease, together with the household furniture and fixtures, and stock in trade, he falsely and fraudulently represented to the plaintiff that the receipts for the spirits sold in the house amounted to £160 per month; and that the quantity of porter sold in the house amounted to seven butts per month; and that the tap was let for £82 per annum, and two rooms in the house for £:7 per annum. The purchase being made, an action was held to lie for the false representations.

HARVEY v. SMITH.

In another part of the brief of counsel, it is insisted that the representations, if material, were such as the plaintiff had no right to rely upon; that by exercising ordinary diligence he could have ascertained the truth or falsity of them.

The matters concerning which the representations were made, were certainly more peculiarly within the knowledge of the defendant, than that of the plaintiff. The means of information were not equally accessible to both parties. An examination of the books of the defendants might not have furnished the necessary information, even on the supposition that the plaintiff would be bound to look into them and digest their contents, instead of relying upon the statements of the defendants. But the case of *Dobell* v. *Stevens*, *supra*, is an authority that the plaintiff was not required to examine the books, for in that case it was shown that the defendants' books were in the house at the time of the treaty, and might have been inspected by the plaintiff. *Vide*, also, as bearing upon this point, *Hunt* v. *Moore*, 2 Barr, 105; *Campbell* v. *Whittingham*, 5 J. J. Marshall, 96.

We can not examine the case upon the evidence, as that does not purport to be all before us. The bill of exceptions, after setting out certain evidence, says, "This was all the *testimony*," &c. This is not in compliance with the 30th

rule. "Testimony" is not synonymous with evidence. *Lindley* v. *Dakin*, 13 Ind. 338.

The jury having assessed the plaintiff's damages at fifteen hundred dollars, the Court ordered this amount to be taken and treated as a credit upon the notes given by the plaintiff to the defendants, and that the notes to that amount be surrendered, &c. In this we see no error. The Court might undoubtedly, in virtue of its chancery powers, make such an order. The proceeding was one which contemplated a rebatement from the notes of the amount of damages the plaintiff sustained by reason of the false representations.

*Per Curiam.*—The judgment is affirmed, with costs.

*L. Q. De Bruler* and *J. C. Denny*, for the appellants.

*J. G. Jones* and *J. E. Blythe*, for the appellee.