## NEWTON KLINE *vs.* WILLIAM P. BAKER.

In replevin of goods sold, the seller, as plaintiff, sought to rescind the sale on the ground of fraudulent representations made by the buyer to the seller's agent within ten days before the buyer sent an order for part of the goods through the agent; and it appeared that the seller delivered this part of them on a credit of sixty days, and before that credit had expired delivered the rest of them on an order directly from the buyer. There was no evidence that the representations were communicated by the agent to the seller before the date of the second order; but the agent testified that they had an influence in inducing him to accept the first order. *Held,* that this testimony, taken in connection with the date of the representations and the dates of the orders, warranted the jury in finding that the representations induced both sales, and that the order would not have been taken by the agent unless he believed the representations to be true.

On an issue whether goods were obtained through fraudulent representations by a buyer in Illinois from a seller in Philadelphia, evidence that the goods were received a month or more before the buyer stopped business, and were immediately shipped by him to the East, and that such goods could not under such circumstances be sold at a profit, is competent to show fraudulent intent.

Copies of bills signed by the seller and acknowledging the receipt of the price of goods, and of way-bills of a carrier for their transportation to an alleged purchaser, are not competent evidence against a third person claiming the goods on the ground that the property in them had never passed from him to such seller.                  .

In an action in which the plaintiff sought to rescind a sale on the ground that it was induced by the defendant's fraudulent representations, the defendant requested the judge to rule that stronger proof was required to prove the representations false than to prove an ordinary agreement. The judge declined to do so, and ruled that the rule of evidence was the same as in other civil cases; that fraud was not to be presumed, but fairly found on the evidence; and that the burden was on the plaintiff to prove his case by the fair preponderance of testimony. *Held,* that the defendant had no ground of exception.

In an action in which the plaintiff sought to rescind a sale on the ground that it was induced by the defendant's fraudulent representations, evidence that the defendant made purchases from other persons, after the date of the representations alleged to be fraudulent, some of which were paid for, and others not, is incompetent, if unaccompanied by any evidence of fraud therein; as is also evidence that the defendant's manager, by whom the representations were made, said, a month after they were made, that he had a share in the business, that the Jews should not get ahead of him, and that he would show them a Yankee trick.

REPLEVIN of intoxicating liquors attached by the defendant, as a deputy of the sheriff of Suffolk, on a writ against Shimei C. Dore.

At the trial in the superior court, before *Putnam*, J., the plaintiff introduced evidence tending to show that in 1865 he was doing business in Philadelphia, and Dore was doing business in Cairo, Illinois; that Josiah H. Burleigh was at that time either a partner of Dore or had the management of his business; that the plaintiff received a letter, dated June 27, 1865, from Edgar G. Sheble, his travelling agent, inclosing an order from Dore for liquors; that he sent those liquors by rail from Philadelphia, to Dore at Cairo, on sixty days' credit; that subsequently he received an order, dated August 7, 1865, from Dore for more liquors, and sent these also by rail from Philadelphia to Cairo; that neither of the lots had been paid for; and that they were the goods replevied.

The plaintiff sought to rescind the sales on the ground that they were induced by false representations on the part of Dore; and introduced in evidence the deposition of Sheble, who testified that the representations were made during negotiations which took place between him and Burleigh on the 17th and 26th of June 1865. The twelfth interrogatory in the deposition was as follows: " State whether or not the representations made to you by Burleigh had any influence in inducing you to accept said order [of June 27] on behalf of the plaintiff." Answer. " Yes, they had such influence." The defendant objected to the reading of this interrogatory and answer, but the judge allowed them to be read. There was no other evidence as to the influence which the representations had on the mind of Sheble in taking the order; the only evidence tending to show that any representations were made, or when they were made, was contained in the deposition of Sheble; and there was no evidence that Sheble knew anything about the order of August 7, or that the plaintiff ever knew or had any information before August 7, that the representations had been made to Sheble.

One Doyle testified, against the defendant's objection, that the liquors purchased by Dore from the plaintiff arrived a month or more before Dore went out of business; and that they were shipped to the East from the wharf boat, without being taken to Dore's store. The plaintiff also introduced evidence, against the defendant's objection, that at the time of the shipment such

liquors could not be bought at the West and thence shipped to the East and sold at a profit.

The defendant introduced evidence that he, as deputy sheriff, had attached, before the replevin, the replevied property as the property of Dore on a writ against him, and " offered to show that the attaching creditors, after the decision in *Ingalls* v. *Baker*, 13 Allen, 449, paid to Ingalls, who lived at the time of the trial, and for a long time before, in Maine, $5600, to be released from his claims against them and the attaching officer, for attaching the property replevied, and other property attached by the defendant, and that Ingalls bought all the property of Dore before it was attached or replevied ; but offered to prove the purchase by Ingalls only by parol evidence of the contents of the paper title given by Dore to Ingalls before the attachment or replevin, namely, copies of the receipted bills and of the receipts of the railroad transporting the property to Ingalls, at Boston ; but the defendant did not offer further proof of the good faith of Ingalls in purchasing the property, and did not offer any evidence that any effort had been made to get of Ingalls the original papers." The judge excluded the evidence thus offered.

" The plaintiff also put in evidence of other purchases made by Burleigh, in the name of Dore, of third persons, on the 18th of May, the 19th, 22d and 27th of June, the 1st, 26th and 31st of July, and the 12th of August, 1865 ; some of which purchases were paid for, and some were not. The defendant objected to the admission of this evidence, on the ground that the acts of Burleigh and Dore, which were subsequent to the time when the representations were made, were not admissible. But the judge admitted the evidence, so far as it bore upon the intent of Burleigh at the time that he made the representations to Sheble, and instructed the jury that they were not to consider it unless they first found that the representations were made and that they were false. The judge also admitted evidence, against the objection of the defendant, that in 1865, just before Dore ceased to do business, Burleigh stated to Doyle that he had an amount involved in the business, and that the Jews should not get ahead of him, and he would show them a Yankee trick."

At the request of the defendant, the judge instructed the jury "that under the law of Pennsylvania, where these contracts of sale were made, it would not be enough for the plaintiff to show that the buyer purchased the goods with an intention not to pay for the same, but that the plaintiff must show some artifice intended and fitted to deceive, practised by the buyer on the seller, some materially false and fraudulent representations which induced the sales; that the burden was on the plaintiff to prove that material representations were made by Dore or by some one authorized by him to make them, that the representations were false and Burleigh knew them to be false, and that Sheble believed them to be true and would not have made the sale if the representations had not been made; and that it was not sufficient that the representations had some effect or influence."

The judge also instructed the jury that the burden was on the plaintiff to prove that the representations or some of them induced the sale, that is, that the order would not have been taken by Sheble had he not believed the representations to be true; and that "if they found, as matter of fact, that the representations were made before the order was sent, and Sheble sent the order immediately upon their being made, these facts they might consider as bearing upon the question whether the representations had any, and if any, what influence on him."

The defendant requested the judge to instruct the jury " that stronger proof was required to prove fraudulent representations, viz. that the representations alleged were false, than was required to prove an ordinary sale or agreement." The judge declined to give this instruction, but instructed the jury " that the rule of evidence was the same in this as in other civil cases ; that fraud was not to be presumed, but fairly found by them on the evidence; and that the burden was on the plaintiff to prove his case by the fair preponderance of testimony."

The defendant further requested the judge to instruct the jury " that, as there was no evidence to show that the representations made to Sheble were ever communicated or known to the plaintiff, as Sheble did not take the order of August 7, 1865, and as it was sent directly by Dore to the plaintiff, the verdict as to the

goods sent under that order must be for the defendant." But
the judge declined so to rule, and instructed the jury "that, if they
found that the first sale was invalid, they would be warranted in
finding the second sale invalid, if they also found that the plain-
tiff sold the goods upon this order of August 7 by reason of the
order of June 27 having been transmitted to him through his
agent Sheble, and that he would not have made the sale under
the order of August 7 on credit, had not his agent made the first
sale on credit."

The jury returned a verdict for the plaintiff, and the defend-
ant alleged exceptions.

*J. D. Ball,* for the defendant.

*J. Lathrop,* for the plaintiff.

GRAY, J. The goods replevied were sold by the plaintiff to
Dore in two lots, the one upon an order inclosed in a letter from
the plaintiff's travelling agent Sheble, dated June 27, 1865, the
other upon an order from the buyer directly, dated August 7,
1865.

The verdict for the plaintiff was returned under instructions,
given at the request of the defendant, that by the law of Penn-
sylvania, where the sales were made, it would not be enough for
the plaintiff, in order to rescind them, to show that the buyer pur-
chased the goods with an intention not to pay for them, "but the
plaintiff must show some artifice intended and fitted to deceive,
practised by the buyer on the seller, some materially false and
fraudulent representation which induced the sales." The only
exceptions argued by the defendant are to rulings upon questions
of evidence.

1. Sheble testified that the negotiations at which the representa-
tions were made took place between himself and Burleigh, who
was either a partner or the managing agent of the business of the
buyer, on the 17th and 26th of June, 1865, and that the repre-
sentations had influence in inducing him to accept the order of
June 27th. This evidence was clearly competent, and, taken to-
gether with the date of that order, sufficient to warrant the jury
in finding (as they were required by the instructions of the court
to do before they could return a verdict for the plaintiff) that

those representations, or some of them, induced both sales, and that the orders would not have been taken by Sheble had he not believed the representations to be true.   This point was directly passed upon when the case was before us at a former stage. *Kline* v. *Baker*, 99 Mass. 253.

2. The testimony of Doyle as to the time of the receipt of the goods by the buyer in Illinois, and his immediate shipment of them to the East, with the evidence that such goods could not under such circumstances be sold at a profit, was competent upon the issue of the buyer's fraudulent intent.

3. Even original bills signed by a seller and acknowledging the receipt of the price of goods, and original way-bills of a railroad corporation for their transportation to an alleged purchaser, would not be competent evidence against a third person claiming that the property had never passed to such seller.   The copies of such receipts and way-bills (if there were no other objection to their admission) were therefore incompetent, as against the plaintiff, to prove a subsequent sale of the goods by Dore to a purchaser in good faith.

4. The rule of law as to the burden of proof is the same as in other civil cases, and was properly stated to the jury.   To have instructed them in the form requested upon this point, without informing them that the only reason which might lead them to require peculiarly clear proof of fraud was the mere presumption of honest dealing, would have been quite as likely to mislead the jury as to assist them.   *Hatch* v. *Bayley*, 12 Cush. 27, 30. *Schmidt* v. *New York Union Insurance Co.* 1 Gray, 529.   *Gordon* v. *Parmelee*, 15 Gray, 413.   *Young* v. *Makepeace*, 103 Mass. 50,

5. But evidence of purchases made by Dore or his agent Burleigh from other persons, though not paid for, being unaccompanied by any evidence of fraud therein, as well as the statements made by Burleigh to Doyle a month after the representations to the plaintiff's agent, had no legitimate tendency to prove fraud practised upon the plaintiff, (even if the jury were already satisfied of the making and the falseness of those representations,) and may well have prejudiced the jury in his favor

*Lynde* v. *McGregor*, 13 Allen, 172, 179, 180. *Horrigan* v. *Wright*, 4 Allen, 514. *Whiting* v. *Withington*, 3 Cush. 413. Upon this ground only, the *Exceptions are sustained.*