GEORGE W. BERGE, APPELLEE, v. FRANK D. EAGER, APPELLANT.

FILED NOVEMBER 19, 1909.    No. 15,818.

Fraud: FALSE REPRESENTATIONS.  In an action to recover for fraud and deceit in the sale of a newspaper plant and business wherein it is alleged that the vendor falsely represented the newspaper had a *bona fide* subscription list of 14,000 subscribers, when in truth it had not to exceed 1,000, and that it was falsely represented that the net profits of the business were $5,000 per annum, when in fact it was a losing business, *held*, that the number of subscribers to the paper and the amount of the business and profits of the establishment were material considerations inducing the purchase.  *Held*, also, that the representations were such as the buyer had a right to rely upon, the matters concerning which they were made being peculiarly within the knowledge of the seller.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE.  *Affirmed.*

*Charles O. Whedon*, for appellant.

*George W. Berge, contra.*

LETTON, J.

This is an action to recover damages for fraud and deceit whereby it is alleged the plaintiff was induced to

enter into a contract for the purchase of a certain newspaper plant. An answer and reply were filed, and the case submitted to a jury, which rendered a verdict in favor of the plaintiff. After the return of the verdict the defendant moved for judgment *non obstante vere-dicto.* This motion was overruled and judgment entered upon the verdict, from which judgment the defendant has appealed.

The only question before us is upon the motion and whether or not the pleadings are sufficient to uphold the verdict. The petition is by no means a model pleading. Under its allegations the plaintiff seeks to recover damages for fraud in inducing him to enter into the contract. He also seeks to recover on account of certain acts of defendant which he alleges constitute a breach of the contract, and these are combined in one cause of action. It is also unnecessarily long and prolix, consisting of nearly eight typewritten pages. Summarized, it pleads: (1) That on the 6th day of April, 1905, defendant owned a weekly newspaper, known as the "Nebraska Independent," with a printing establishment, consisting of the machinery, material and fixtures usually used in such plants, and particularly described in exhibit B. (2) The defendant had been in the business for ten years and was fully acquainted with the value of the plant, newspaper and subscription list; that these facts were peculiarly within his knowledge, and not within the knowledge of any one else. (3) That the plaintiff was inexperienced in the business and had no knowledge of the value of any of the items; that he had no means of ascertaining the value except as represented by the defendant, and that he relied upon the defendant's statements. (4) That he so informed defendant; that defendant then stated that the representations were based upon his own knowledge, and he would warrant that the property and business was of the value of $12,000; that the physical property was valued $6,000, and the newspaper and subscription list were worth $6,000; that the

type, machinery and appliances were new and in good condition; that the newspaper had a *bona fide* circulation and subscription list of 15,000 names; that the subscription list and other names in the office were not in the hands of any other persons, and that the list then exhibited and furnished by defendant was the only copy in existence; that the business had yielded a net profit of $5,000 a year. (5) That the plaintiff believed these representations and relied upon them, and that while plaintiff was considering the purchase defendant reduced the price to $11,500, and reduced the number of names in the subscription list to 14,000, again representing that this was a *bona fide* subscription list in every respect, and that all the persons represented by said list were *bona fide* subscribers to the paper; that plaintiff, relying upon all of defendant's representations, closed the deal and paid defendant $11,500 for the property. The sixth paragraph specifically and at great length negatives the representations alleged, and pleads their falsity, and the petition ends with allegations of damage and prayer for recovery.

The answer admits the execution of the contracts and the payment of $11,500 for the property, and denies any false representations whatever. It further alleges that shortly prior to the 6th of April, 1905, the plaintiff entered upon an investigation of the books of the business and of the subscription list; that on the 6th of April, by agreement, he took possession of all the property for the purpose of investigation and examination; that he selected one Watkins, a practical and experienced newspaper man, for that purpose, and that Watkins was placed in possession and control of the office and business between the 6th and 18th days of April; that during this time all mail for the newspaper was delivered to the plaintiff, who had possession and control of the property, except the editing and publishing of the paper; that on the 15th of April plaintiff stated he had about concluded not to purchase unless defendant would make a reduction; that negotiations continued during the day, and

defendant finally agreed to sell the property for $11,500; that plaintiff was afforded every opportunity to acquaint himself with the value and extent of the same and of the subscription list, and is now estopped to recover anything from the defendant.

In reply, the plaintiff denies that either by himself or by his agent he entered upon an investigation of the books, subscription list and property; avers that he told defendant he would have to rely entirely upon his representations and statements; denies that he placed Watkins in charge of the plant for the purpose of examining the property; and alleges that Watkins was present in the office of the newspaper with the defendant for the purpose of learning something about the way of running the newspaper and printing plant, so that he would be able to conduct the business. He denies that he complained of the condition or value of the property on April 15, and says that he knew nothing about the value or condition of the property until in May, 1905, and that as soon as he discovered the fraud he demanded that the plaintiff either take the property back and refund the purchase money or pay the damages he had sustained.

The first point made by defendant is that the pleadings do not contain the statement of any fact which affords a basis of an action for fraud and deceit. A large portion of his brief is devoted to a discussion of the proposition that the false representations of the value of the property charged to have been made are not sufficient to support a verdict for deceit. While admitting that it is a general rule, which, however, has many exceptions, that a statement by a vendor of the value of the article he is selling is usually held to be merely the expression of an opinion, "dealer's talk," and not the representation of a fact upon which an action for fraud and deceit might be founded, we believe it unnecessary to consider this point. We will also accept as sound the further proposition that a fraudulent representation must be of a material fact, and that injury must result in order to recover. Tested by these

canons, let us see whether the petition contains any direct and specific statements of fact upon which, if made as alleged, the vendee was entitled to rely, and the truth or falsity of which statements of fact he was not then in a position to know or readily ascertain, and as to which he would be compelled to rely upon defendant's representations.

The first direct statement of fact as to which it was impossible that the plaintiff could acquire any definite and certain knowledge as to its truth or falsity within the time allowed is "that said weekly newspaper had a *bona fide* circulation and subscription list of 15,000 names." The direct representation of this as a fact is alleged, and it is further alleged that "the defendant wilfully and fraudulently put on said subscription list, prior to said sale to this plaintiff, thousands of names which were not *bona fide* subscribers and who had not in any way subscribed for said paper." The fact of whether or not the newspaper had 15,000 *bona fide* subscribers or whether in truth or in fact it only had 1,000 paying subscribers was one of great importance and of much moment in determining whether the publication was or would be in the future a profitable enterprise or whether it was worth the price. The income depended largely on the number of *bona fide* paying subscribers, and, while in the future the patronage might be withdrawn, a *bona fide* list of 14,000 or 15,000 subscribers would be an asset of great value. From its very nature, its genuineness could not be readily ascertained. It was peculiarly within the defendant's knowledge, and, if the representation was false, it would be an actionable deceit.

Another direct representation pleaded is that the subscription list furnished to plaintiff by the defendant was the only copy in existence; that this list and all other names in the office were not in the hands of any other person or persons; and it is charged that the defendant himself had retained a copy of the list and other names as well, and that copies had been taken by other persons

with the knowledge and consent of defendant and were in
the hands of other publishers. It is also charged that by
reason of this fact another publisher, who had one of
these copies, was enabled to circulate an article injurious
to plaintiff among the subscribers to the paper. The fact
that a rival publisher had a copy of the list might ma-
terially affect the value of the business and might entitle
plaintiff to recover damages to the extent that he might
prove he suffered pecuniary loss in consequence. If he
had known of this fact before the purchase, it might, and
probably would, have had the effect to make him decline
to buy. If made, we think it was a material representa-
tion.

Another direct representation set forth is "that said
printing and newspaper business had yielded the defend-
ant a net profit of $5,000 a year." This is a fact which
was peculiarly within the knowledge of the vendor, and
could not be within the knowledge of the vendee, unless
true and accurate books of account had been kept for
some years previous to the sale, and sufficient opportunity
afforded to the vendee to investigate and determine
whether such was the fact.

It is also alleged "that the business had not yielded a
profit to the defendant of $5,000, or any other sum, a
year, but was a losing business when defendant sold it
to plaintiff." A direct representation and warranty, as
the petition pleads was made, that a certain business pro-
duced a net amount of profit per annum is a direct al-
legation of a fact, upon which a vendor has the right to
rely, and which, if false, will support an action for deceit.
*Harvey v. Smith,* 17 Ind. 272, is a case very similar to
this. It concerned the sale of a newspaper plant and
business, and the plaintiff counted upon false represen-
tations as to the volume of the subscription list and the
profits of the business. The court held that the number
of subscribers to the paper and the amount of the busi-
ness and profits of the establishment were material con-
siderations inducing the purchase, and that the represen-

tations were such as the buyer had a right to rely upon, the matters concerning which they were made being peculiarly within the knowledge of the seller. To the same effect as to the principles involved are *Foley v. Holtry*, 43 Neb. 133; *McKibbin v. Day*, 71 Neb. 280; *Olcott v. Bolton*, 50 Neb. 779; *Handy v. Waldron*, 18 R. I. 567, 49 Am. St. Rep. 794; *Clark v. Ralls*, 24 N. W. (Ia.) 567.

Aside from the denial of the allegations of the petition, the answer and reply present the issue of whether or not the plaintiff made, or was permitted to make, such independent investigation of the facts with reference to the property and subscription list that he should be held to have relied upon this investigation instead of upon the representations, if any, made to him by the defendant. As to this issue, if the proofs supported plaintiff's position, the pleadings would sustain a verdict, if the jury also found the facts stated in the petition to be true. The evidence is not before us, but we are entitled to presume that it conformed to the issues made. This presumption being indulged in, we think the petition pleaded a number of direct representations of fact affecting the value of the property sold, which representations, if false in the particulars alleged, would justify and uphold an action for damages.

For these reasons, the judgment of the district court is

AFFIRMED.