D. S. GILES & SON, APPELLEE, V. WILLIAM HORNER,
APPELLANT.

FILED OCTOBER 30, 1914. No. 17,674.

1. **Fraud: ACTIONABLE FRAUD.** Ordinarily, where a vendee has an
   opportunity for the inspection of personal property, representations
   by the vendor as to the value of the same are regarded as mere
   expressions of opinion, and afford no basis for an action of fraud
   and deceit; but where such representations are based on special
   knowledge of the vendor, which he obtained or pretended to have
   obtained by invoicing the property, and are believed by the vendee,
   and acted upon by him to his injury, they amount to actionable
   fraud. *McKibbin v. Day*, 71 Neb. 280.

2. **Trial: INSTRUCTIONS: PREPONDERANCE OF EVIDENCE.** Where the plain-
   tiffs sued the defendant for damages, and the court instructed the
   jury as to the amount of proof necessary to establish fraud: "You
   are instructed that, where a party alleges fraud or fraudulent
   representations in an action or trade, he must produce a stronger
   proof than would be sufficient to establish a mere debt. Every
   party is presumed to act and deal honestly, and it is incumbent
   on him who alleges such fraud or dishonesty to furnish proof
   sufficient to overcome the presumptions of honesty," *held*, that the
   instruction is erroneous because it requires more than a pre-
   ponderance of the evidence to establish fraud.

3. **Fraud: INSTRUCTIONS.** Where the defendant set up fraudulent
   representations upon the part of the plaintiffs, who were seeking
   to recover damages in an action for an alleged breach of con-
   tract, and the court instructed the jury: "You are instructed
   that, if you find from the evidence that the defendant in this
   action had an opportunity to examine the stock of hardware, and
   that the was well acquainted with the same, having been in and
   about said stock every day and a number of times during the day,
   and that it was so located as to be convenient for him to observe
   the same, and that he could easily have ascertained the value of
   said stock, then and in that case you are instructed that it would
   not constitute any fraudulent representations in behalf of the
   plaintiff, if he had made statements relative to the value of said
   stock, and under such circumstances it will be your duty to find
   for the plaintiff and against the defendant," *held*, that the instruc-
   tion was misleading and prejudicial, because it took from the jury
   the consideration of whether the plaintiffs represented to the
   defendant that they had made an invoice of the stock of hard-

ware, and by such representations induced ·the defendant to trade properties with the plaintiffs, when otherwise he might not have done so.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE.  *Reversed.*

*Wilcox & Halligan* and *J. G. Mothersead,* for appellant.

*J. W. James, contra.*

HAMER, J.

The defendant, William Horner, appeals from a judgment of the district court for Lincoln county rendered against him and in favor of the plaintiffs, D. S. Giles & Son, in the sum of $625.44.   The defendant in his brief alleges that the plaintiffs, who were partners, agreed in writing with the defendant to transfer to the defendant their stock of hardware at Wallace, Nebraska, in exchange for nine head of horses and colts, a piano, and a saddle and bridle, all to be furnished by the defendant and delivered to the plaintiffs, and, in addition, the defendant agreed with the plaintiffs to pay $660, bills against the business of the plaintiffs for goods sold and delivered to them.   The defendant took possession of the stock of hardware, but he refused to take up the bills against the business, and claims that when the plaintiffs made the agreement with him they fraudulently represented the stock of hardware to be of greater value than it actually was; that the defendant and his wife, after the defendant got possession, took an invoice of the stock of goods and found it to inventory only $1,180; that Giles, in the presence and hearing of Horner, stated that he had inventoried the stock of goods the night before the trade was made, and that it inventoried about $2,200, not including some wire and other things in the implement shed; and that if these things were counted the inventory would amount to about $2,300. The plaintiffs deny making any representations concerning the amount and value of the goods in the store, but say that the night before the trade was made an *estimate*

was made of what the stock on hand was. After the defendant, Horner, took possession of the store and found, as he claims, that the goods inventoried less than he understood their value to be, he refused to pay the outstanding bills against the business, and he so notified the plaintiffs. There was a bill of $200 for woven wire. There was some dispute about the bargain concerning the woven wire, but it is undisputed that the defendant paid for it. If the plaintiffs represented that the stock would inventory $2,300, it would leave the defendant damaged in the sum of $1,120, less a remainder of $460 yet to be paid on the bills against the defendant, after taking out the item of $200 paid for the woven wire. In the answer of the defendant it is alleged that the plaintiffs had just taken an inventory of the stock and that they knew that the inventory then taken amounted to $1,300, and no more, and that, when the plaintiffs made their representations to the defendant that the stock was of the value of $2,300, they knew said representations were false, and that the inventory only amounted to $1,300; that the defendant believed the representations of the plaintiffs that the stock of goods was of the value of over $2,200, and, relying upon the truth of said representations, signed the agreement, which he otherwise would not have done. In the reply the plaintiffs deny that they represented the stock of goods to be of the value of $2,300, deny that they ever stated that they would guarantee the stock to be of the value of $2,300, and deny that they ever represented that an inventory of the stock had been taken. It is further alleged in the reply that the plaintiffs were about the store every business day during many months, and knew the condition of the stock, and knew its value, and that the plaintiffs were also familiar with the trade.

The first error alleged is the giving of instruction No. 9, which is as follows: "You are instructed that, where a party alleges fraud or fraudulent representations in an action or trade, *he must produce stronger proof than would be sufficient to establish a mere debt.* Every party is presumed to act and deal honestly, and it is incumbent on him

who alleges such fraud or dishonesty to furnish proof sufficient to overcome the presumptions of honesty." It is contended by defendant that "fraud is but one of the elements of a civil action, and as such it is established by a preponderance of the evidence."

In *Patrick v. Leach,* 8 Neb. 530, the court was requested to instruct the jury that they "will not be justified in finding that Patrick was guilty of fraud, unless the evidence on that subject shall satisfy their minds thoroughly. Evidence which might satisfy them in any ordinary action of debt is not sufficient. But the evidence which produces in the minds of the jury a clear, distinct, and positive conviction, in which they rest in confidence that they are right, will alone be sufficient to justify the jury in finding · Patrick guilty of the alleged frauds." This instruction was refused and the plaintiff excepted. This court held that it was calculated to mislead, and that it was properly refused. This court said: "But the degree. of proof required in an action for damages is merely a clear preponderance of the testimony establishing the fraud."

In *Kline v. Baker,* 106 Mass. 61, the syllabus states the point as follows: "In an action in which the plaintiff sought to rescind a sale on the ground that it was induced by the defendant's fraudulent representations, the defendant requested the judge to rule that stronger proof was required to prove the representations false than to prove an ordinary agreement. The judge declined to do so, and ruled that the rule of evidence was the same as in other civil cases; that fraud was not to be presumed, but fairly found on the evidence; and that the burden was on the plaintiff to prove his case by the fair preponderance of testimony. *Held,* That the defendant had no ground of exception."

"Fraud is never presumed, but must be clearly proved in order to entitle a party to relief on the ground that it has been practiced on him." *Davidson v. Crosby,* 49 Neb. 60.

"Where fraudulent representations are relied on as a defense to an action, the same must be proved by a clear

preponderance of the evidence." *Ish v. Finlay,* 34 Neb. 419.

"Fraud is never presumed, but must be clearly proved in order to entitle a party to relief on the ground that it has been practiced upon him." *Clark & French v. Tennant,* 5 Neb. 549, citing *Howe v. Howe,* 99 Mass. 89.

In *Tootle & Maule v. Dunn,* 6 Neb. 93, it is said in the syllabus: "Fraud is never presumed, but must be proved, and the degree of proof necessary to establish it is the same in equity as at law."

In *Hough v. Dickinson,* 58 Mich. 89, it is said in the body of the opinion: "In the twenty-third request, as stated in the record, and which was given by the court, the jury was told: 'The proof of fraud should be so clear and conclusive as to leave no rational doubt of its existence.' Such is not the rule in civil cases. It applies only in criminal proceedings. Fraud, like any other fact, may be proved by any facts or circumstances which satisfy the mind by a preponderance of the evidence in any given case of its existence, and many times it is inferred, and properly so, from circumstances, and often cannot be proved in any other way. *O'Donnell v. Segar,* 25 Mich. 367. Mr. Justice Campbell, in discussing this question in *Watkins v. Wallace,* 19 Mich. 57, where the language used by the court was, 'The proof must be clear and conclusive,' says: 'No such rigid rule prevails in any such civil case. Common sense teaches every one to be cautious in arriving at conclusions which are prejudicial to character and honesty, but if the testimony produces a rational belief, a civil jury cannot be required to discard it because it is not conclusively established.' In these views I fully concur. The charge was erroneous, and it is difficult to say the jury were not misled by it."

In *Watkins v. Wallace,* 19 Mich. 57, it is said in the syllabus: "It is error for a court to charge a jury, so as to mislead them into the belief that more stringent proof was necessary than the law requires. In civil cases a jury cannot be required to discard testimony which produces a

rational belief, because it does not conclusively establish the fact to be proved."

In *Turner v. Younker*, 41 N. W. 10 (76 Ia. 258), the third point in the syllabus reads: "It is erroneous to charge that fraud may be proved by showing circumstances from which the inference of fraud is natural and irresistible, as it is only necessary that the circumstances should lead naturally and fairly to the conclusion sought to be established." In the body of the opinion it is said: "On the issue of fraud the court gave the following instruction: 'The burden of proving fraud is upon the party alleging it. Fraud is not to be presumed without proof. Yet fraud, like any other fact, may be proved by proving circumstances from which the inference of fraud is natural and irresistible; and if such circumstances are proved, and they are of such a character as to produce in the mind of the jury a conviction of the fact of fraud, then it must be considered that fraud is proved.' The doctrine of this instruction is that the circumstances relied on to establish that the transaction was fraudulent must lead irresistibly to that conclusion, or they are not sufficient. We think it is erroneous. * * * In civil actions the parties are required to establish their allegations by a preponderance of testimony only."

In *Foley v. Holtry*, 43 Neb. 133, this court held: "The elements necessary to sustain such an action (to rescind) have been recently summarized by this court as follows: (1) It must be alleged and proved what representation was made; (2) that it was false; (3) plaintiff believed the representation to be true; (4) relied on and acted upon it; (5) and was thereby injured."

The instruction concerning fraud requires too high a degree of proof, and is therefore prejudicial to the defendant, because it probably led the jury to reach the verdict rendered.

Instruction No. 10, given at the plaintiffs' request, reads as follows: "You are instructed that, if you find from the evidence that the defendant in this action had an opportunity to examine the stock of hardware, and that he

was well acquainted with the same, having been in and about said stock every day and a number of times during the day, and that it was so located as to be convenient for him to observe the same, and that he could easily have ascertained the value of said stock, then and in that case you are instructed that it would not constitute any fraudulent representations in behalf of the plaintiff, if he had made statements relative to the value of the said stock, and under such statements relative to the value of said stock, and under such circumstances it will be your duty to find for the plaintiff and against the defendant."

Where both parties have an equal opportunity of ascertaining the value of the goods, any opinion concerning the worth of the property expressed by the vendor may not be objectionable; but if the information as to the value of the goods is information peculiarly within the knowledge of the vendor, and to ascertain the value of the goods it would require a special examination on the part of the vendee, then the vendee, as a matter of law, has a right to rely upon the representations of the vendor. The objection to the above instruction is that it overlooks the plaintiffs' statement concerning the making of the inventory.

The defendant testified that he sometimes saw the stock of hardware every day, but that he would average once a week, and then again he might not be in for two weeks; that he did not know what stock the plaintiffs had there. There is apparently nothing in the evidence to justify the court in giving the instruction above given. The defendant could not know anything concerning the goods shown by an inventory. Before he could know what goods were in the store, the defendant would have to make an independent investigation on his own account; that is, he would have to make an inventory. He had a right to rely upon the peculiar and exclusive knowledge of the plaintiffs.

The defendant testified that the plaintiffs took an inventory in the evening before the trade was made. He remembered that they went through the stock; that it was in the evening; that they took the inventory after

dark; that there were three Spencers there, and a Mr. Stevens, who used to clerk for the Spencers in the lumber yard; and that Stevens kept one book while Giles was keeping the other. The plaintiff Giles denies that an inventory or invoice was made. He was asked the question whether anything was said about an invoice, and he answered, "No, sir.", Although Mr. Giles denied that any invoice was taken, he testified: "We did not take any invoice; *we took an estimate.* Q. When was that taken? A. A night or two before I made the trade with Mr. Horner." It was for the jury to determine in the conflict of testimony between these witnesses. It was their province to find whether the defendant had a right to rely upon the plaintiffs' representations to the effect that he had taken an invoice. The above instruction seems to be objectionable. This instruction was no doubt prejudicial to the defendant under the evidence given. *Foley v. Holtry,* 43 Neb. 133; *Olcott v. Bolton,* 50 Neb. 779; *Perry v. Rogers,* 62 Neb. 898; *Berge v. Eager,* 85 Neb. 425; *McKibbin v. Day,* 71 Neb. 280. In the last named case the effect of possessing information touching the value of goods sold, and being peculiarly within the knowledge of one of the parties, and requiring a special examination on the part of the other party, is discussed, and the effect of such condition is considered and stated. The plaintiff in that case purchased certain land and a stock of hardware. The defendant represented the land to be of certain value, and said that he had invoiced the stock of hardware, and that it was of a certain value. The court instructed the jury that, where the parties had an equal chance of examining the goods, such representations were merely expressions of opinions, but on appeal to the supreme court the judgment of the lower court was reversed. The supreme court held that the representations did not apply with respect to the land, but that they did apply to the stock of hardware. It was held that the knowledge of the defendant as to the value of the stock of hardware was peculiarly within the knowledge of the seller and that to ascertain the truth or falsity of the statements made

would require an independent or special examination, and that the purchaser had a right to rely upon the statements and representations of the seller concerning the value of the stock of goods. It will be noticed that the instant case and the case cited have a close resemblance. In the instant case the defendant, Horner, would be required to make a special inventory of the goods in order to ascertain the truth of the plaintiffs' representations. When the court instructed the jury in effect that the defendant had no right to rely upon those representations, there was prejudicial error to the defendant.

The judgment of the district court is

REVERSED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.