Foley v. Holtry.

THADDEUS J. FOLEY, APPELLEE, V. WILLIAM M. HOLTRY, APPELLANT.

FILED DECEMBER 5, 1894. NO. 5446.

1. **Estoppel:** PLEADING. The plaintiff is not estopped by an averment in his petition immaterial at that stage of the pleadings. Notwithstanding such immaterial averment, he may in his reply aver a different state of facts.

2. **Fraudulent Representations:** CONTRACTS: RESCISSION. In an action to rescind a contract for the sale of stock in a corporation because of fraudulent representations inducing the contract, the representation proved was that a report of the secretary of the corporation showed that it was earning a profit of two per cent per month. The report referred to did show what was represented, but the report was false, and the defendant knew that it was false. *Held,* That the defendant thereby adopted the report as his own statement, and was responsible to the same extent as if he had represented the profit to be in fact as it was shown by the report.

3. ———. A person is justified in relying on a representation made to him in all cases where the representation is a positive state-

ment of fact, and where an investigation would be required to discover the truth.

4. ———. The fact that the plaintiff made inquiries elsewhere which did not disclose the falsity of the representations is no defense. The plaintiff is entitled to relief if the representations were a material inducement to the contract, although he may have made efforts to discover the truth thereof, and did not rely wholly upon the veracity of defendant.

REHEARING of case reported in 41 Neb., 563.

*Grimes & Wilcox,* and *E. C. Calkins,* for appellant, in arguing that the evidence submitted was not sufficient to sustain a finding in favor of the plaintiff upon the merits either in an action at law or in equity, cited: *Emery v. Johnson,* 37 Neb., 53; *McClanahan v. McKinley,* 52 Ia., 222; *Dickson v. Knox,* 71 Ia., 728; *Poland v. Brownell,* 131 Mass., 138; *Salem India Rubber Co. v. Adams,* 40 Mass., 256; *Brown v. Leach,* 107 Mass., 364; *Ely v. Stewart,* 2 Md., 408; *Whiting v. Hill,* 23 Mich., 399; *Hobbs v. Parker,* 31 Me., 143; *Slaughter v. Gerson,* 13 Wall. [U. S.], 379; *Long v. Warren,* 68 N. Y., 426; *Tallman v. Green,* 3 Sandf. [N. Y.], 437; *Vincent v. Berry,* 46 Ia., 571; *Columbia Electric Co. v. Dixon,* 46 Minn., 463; *Grymes v. Sanders,* 93 U. S., 55; *White v. Smith,* 18 Pac. Rep. [Kan.], 931; *Doran v. Eaton,* 40 Minn., 35; *Morgan v. Dinges,* 23 Neb., 271; *Reynolds v. Palmer,* 21 Fed. Rep., 433.

The plaintiff, after he had sufficient notice or means of knowledge of his rights, delayed the election to rescind so as to estop him to seek his remedy in equity. (*Knopp v. Kelsey,* 102 Mo., 291; *Hooper v. Wells, Fargo & Co.,* 27 Cal., 11; *California Electrical Works v. Finck,* 47 Fed. Rep., 583; *Veazie v. Williams,* 3 Story [U. S.], 612; *Gillespie v. Sawyer,* 15 Neb., 536; *Forbes v. McCoy,* 24 Neb., 702; *Greenwood v. Finn,* 136 Ill., 146.)

*E. J. Hainer, B. I. Hinman,* and *T. Fulton Gantt, contra.*

IRVINE, C.

An opinion was filed in this case June 26, 1894 (41 Neb., 563). A short statement of the case will be found in that opinion. The judgment of the district court was then reversed upon the ground that the conduct of the plaintiff, subsequent to a time when the petition admitted he learned of the fraud, estopped him from rescinding the contract. A rehearing was allowed and the court is now convinced that in the former opinion an error was committed as to the effect which should be given to the averment in the petition referred to. The language of this averment, in the original petition, is as follows: "As soon as plaintiff discovered that said representations were false, to-wit, on or about the 30th of April, 1890, and at several times since, plaintiff applied to defendant, and tendered to him said two hundred shares of the capital stock aforesaid." In the amended petition, upon which the case was tried, the language is the same, except that in place of the word "discovered" the pleader uses the phrase "had reason to believe." Upon the rehearing there has been considerable argument addressed to the question as to whether these phrases are or are not equivalent. We do not, however, think this question material. In the former opinion it was held that there was no such delay in bringing the action as would of itself bar the plaintiff from relief, and relief was denied solely because, with admitted knowledge of the facts, the plaintiff had permitted the defendant to incur large expense in improving the property taken by him in exchange for the stock, and had continued to deal with the stock as his own, and take part in the management of the corporation. . This was a matter of defense, and was not a fact which the plaintiff was called upon to anticipate and negative in his petition. Therefore, the averment in the petition that plaintiff had reason to believe that the representations were false on April 30, 1890, was not a necessary or even a ma-

terial allegation in the petition; the time when plaintiff
learned of the fraud only became material when the defend-
ant by answer pleaded the facts constituting the estoppel.
The defendant by answer pleaded the estoppel, and also
pleaded that the plaintiff had full knowledge of the stand-
ing and condition of the company at the time of his pur-
chase.    The reply meets this by averring that plaintiff had
no actual knowledge of the facts constituting his cause of
action until after the improvements were made and imme-
diately prior to the commencement of the action.    Unless,
therefore, the immaterial averment in the petition estops
the plaintiff from afterwards asserting a contrary state of
facts, the time when he learned of the fraud was properly
placed in issue and left for determination upon the evidence.
In *Lee v. Rogers*, 1 Lev. [Eng.], 110, the plaintiff counted
on a promise made May 1, 3 Car. I, for money lent.    The
defendant pleaded that the writ was first brought February
4, 14 Car. II, and that he did not promise within six
years before said 4th of February.    The plaintiff replied
that defendant assumed within six years before said 4th of
February.    It was moved in arrest of judgment that it
appeared by the declaration that the cause of action arose
more than six years before action brought, and that the
replication was a departure; but it was held that the statute
of limitations must be pleaded, and that, therefore, the
replication was no departure, because the pleading of time
in the declaration was immaterial.    In *Morgan v. Vaughan*,
T. Raym. [Eng.], 456, the plaintiff unnecessarily alleged
his age at a particular time, and the defendant urged this
as an estoppel from showing the fact; but it was held to
constitute no estoppel, because plaintiff's infancy and not
his precise age was the issue, and the averment was imma-
terial.    In *Gledstane v. Hewitt*, 1 Tyr. [Eng.], 445, the
action was detinue for a promissory note, the declaration
counting on a general bailment.    The defendant pleaded a
special bailment and the replication confessed and avoided.

It was held that this was no departure because the averment of the general bailment in the declaration was immaterial. The pleader can hardly be held to a stricter accountability under the Code than at common law, and we have concluded that whatever might be the effect of the averment in the amended petition, if offered as an admission, it was an averment not material in that stage of the pleadings, and that the plaintiff is not estopped thereby. This conclusion leads to an examination of the whole case.

The law governing the case is for the most part well settled, and the question presented is really not what principles of law control the case, but whether there was evidence to which the law of rescission is applicable. The elements necessary to sustain such an action have been recently summarized by this court as follows: (1) It must be alleged and proved what representation was made; (2) that it was false; (3) that plaintiff believed the representation to be true; (4) relied on and acted upon it; (5) and was thereby injured. (*Stetson v. Riggs*, 37 Neb., 797.) To these requirements the courts formerly added another, to-wit, that defendant must have known that the representations were false. A more accurate statement in view of the later decisions would be that the defendant must either know that the representations were false, or else they must be made without knowledge as positive statements of known fact. The rule as thus formulated practically charges the defendant with notice of the truth in all cases where he makes positive representations of existing facts. We shall examine the evidence with reference to the foregoing propositions.

False representations, in order to make a case for relief, must generally be positive statements in regard to existing facts and not mere expressions of opinion or promises as to future occurrences. The representations charged in the petition were that the elevator company stock was owned by well known, reliable business men of experience; that Mr. John Bratt was president of the company and had in-

vested in the stock $2,500; that the corporation was solvent; that it had earned for the preceding six months two per cent per month on its paid-up capital stock, and that all of forty per cent of its capital stock was paid up. The evidence shows that the stock of the company was owned by the men who were represented to own it and that John Bratt was president. These representations may, therefore, be dismissed from further consideration. The evidence also shows that Mr. Bratt did hold capital stock to the amount of $2,500 par value, but that this was held under an agreement whereby Bratt had the option of retaining the stock or turning it in to Holtry and another stockholder and receiving therefor his investment back with ten per cent interest; an option which he finally exercised. It appears, however, by Foley's own testimony, that he had sufficient information as to the nature of this agreement to put him upon inquiry as to Bratt's investment, if he did not have complete knowledge of the fact. Nothing, therefore, can be counted on the falsity of this representation.

As to the representation in regard to the amount of capital stock paid up, Mr. Foley testified positively that Holtry represented to him that the capital stock was $75,000, and that forty per cent had been paid in; but he stated upon cross-examination that before the trade was consummated he learned that only thirty-seven and one-half per cent of the stock which he was buying had been paid, and he also testified when on the stand in rebuttal that he learned before the trade was made that all the stock had not been subscribed. Upon this point, therefore, the plaintiff can claim nothing.

As to the representation in regard to the solvency of the corporation, there is no proof of any direct representation on the subject. It appears that a report of the secretary prepared shortly before the trade was made showed that the corporation was solvent, but Foley testifies that he did not see this report until after the trade was made, although

statements had before been made to him in regard to a portion of its contents. If there was any representation as to solvency it must, therefore, be implied from the representations made as to the company's earnings, and we are thus limited in our further inquiry to the allegations in regard to those representations. The specific representation claimed to have been made on the subject was that for a period of six months preceding the transaction the company had been earning a profit of two per cent a month on its capital stock. The evidence is not only ample to sustain the finding of the trial court upon this issue, but it is such that no other finding could be sustained. Mr. Foley several times, and in the most positive terms, testifies to this representation, and Mr. Holtry himself says: "According to the last statement, as I told Mr. Foley, since Mr. Allum had gotten it out, did show a gain of pretty nearly two per cent per month. Of course the books were not closed up and we cannot tell exactly the amount." Mr. Holtry repeats in two other places that he made this statement to Mr. Foley. The statement appears to have been made with reference to the secretary's report, and it is inferable from all the evidence that Holtry was basing his statement upon the showing made by that report, and that Foley was so informed. The representation, then, was not in regard to the profit as an independent fact, but as to a profit as shown by the secretary's statement. The effect of this distinction it will be necessary to notice hereafter.

Was this representation true? There is no doubt that on January 10 a statement was prepared purporting to show the business from July 10, 1889, to January 10, 1890, and that it disclosed a profit during that period of about two per cent a month. This report does not seem to have been presented to the directors until March 6, but it had been disclosed to individuals and its contents were known to Holtry and others-interested. A vigorous effort was made by the defendant to prove the substantial accuracy of this re-

port.  The question before us is not, however, whether
there was evidence to sustain the report, but whether there
was sufficient evidence impeaching it to sustain the finding
of the trial judge.  The evidence upon this subject is very
voluminous, and we cannot refer to it in detail.  An expe-
rienced book-keeper testified in regard to an examination of
the books and business.  The effect of his testimony is
that when the books are carefully examined and certain
corrections in the method of book-keeping made, they dis-
close that there was no profit made during the period in
question.  The elevator company, besides its business at
North Platte, its principal location, had agents at a num-
ber of other points engaged in the business of buying and
selling grain.  In the accounts with these agents the books,
at the time the statement was made, failed in some in-
stances to show proper credits, thus making the resources
of the company appear greater than they were in fact.
Some of these items are quite satisfactorily explained.  It
does not appear that in any case were the books fraudu-
lently kept, but it does seem from a review of the testi-
mony that the method pursued left the books in such a con-
dition that the statement of January 10 exhibited too large a
proportion of resources.  There is also evidence tending to
show the omission from the books of several items of out-
standing indebtedness, and we think there was ample to
warrant the court in finding that such a method had been
pursued as to relegate some losses to the preceding six
months, and postpone others until the following six months,
both processes resulting in a fictitious showing of prosper-
ity during the period in question.

The representation by Holtry having been as to what
this statement showed and not directly and positively as to
what the profit actually had been, the next question which
arises is whether under the circumstances he is responsible.
If Holtry possessed and claimed to possess no knowledge
except that derived from the statement, we would not hesi-

tate to say that he could not be held responsible.   In other words, if his representation amounted to this, that he did not know of his own knowledge the condition of the company, but that the secretary's report showed a certain profit, then, the report showing such profit, the falsity of the representation would not be established.   But while it is clear that in his conversation with Foley he based his representation upon the showing made in the report, he coupled this statement with a distinct representation that the mill was a good paying investment.   It is probable that this would have to be taken as a statement of fact within his own knowledge, but it is not necessary to so decide.   We think that if as a matter of fact Holtry knew that the report was false and that the mill had not been earning a profit, then he cannot protect himself by falling back upon the contents of the report.   If he knew the report was false and based his representation upon its contents, by so doing he adopted the report as his own representation and must be held responsible for its falsity. Upon this subject the evidence is that Holtry was at the time, and had from the start been, general manager of the company, with his place of business in the mill, and, therefore, presumably had some familiarity with the business. There is also evidence tending to show that he made entries upon some of the books.   He presumably had access to the books.   These facts in themselves are only circumstances showing the opportunity of knowledge upon his part, but do not directly show his knowledge.   Mr. Carter, who is a stockholder, testifies that after the report was made known, and before the trade between Holtry and Foley, Carter went to Holtry and said : "Everything looks pretty well now. It seems as if everything was turning, and we are making money.   I presume I can use—I suppose some call it 'dividend'—what the profit would be for my share for interest upon my notes.   I says, 'They have been talking about it, and I would turn that over.'"   To this he testifies that

Holtry responded, "Mr. Carter, we are not making money."
Carter then said, "Mr. Allum said so yesterday in the meet-
ing; he reported it." Holtry then said: "We are not
making anything. We are running behind all the time.
We have to say something to satisfy them—something
that will content them." He further testifies that Holtry
added, "We have to do something or else they will shut
us up." Carter said, "That is a queer way of making
a report if we are not making anything." Holtry re-
sponded, "Well, we are not making anything, and the
stiller we keep the better it will be." Severe comments
are made in argument upon Carter's credibility; but
this was a question for the trial judge and he evidently
believed his testimony. If we accept it we must conclude
that Holtry knew that the report was false; that he knew
the company had not earned any profit and that when he
referred to the report as showing a profit, it was done with
the deliberate intention of inducing Mr. Foley to believe
a state of affairs very material to the value of the stock
and which Holtry knew did not exist. There is ample di-
rect testimony by Foley that he believed the representations
made to him. The defendant called several witnesses, by
whom he proved that shortly after the trade Foley stated
to them that the mill had been earning two per cent a month.
While this testimony was introduced for another purpose,
it tends to show that Foley at the time did believe the rep-
resentations to be true. Equally positive is Foley's testi-
mony that he relied on this representation and acted upon
it. It does appear that he made inquiry of others and that
to a certain extent he also relied upon their statements, but
it is not necessary in such a case that the plaintiff should
have relied entirely upon the representations made to him.
It is sufficient if they formed a material inducement to
the trade. That they did so in this case, appears not only
from Foley's testimony, but is inferable from all the cir-
cumstances. It is urged that Foley had no right to rely

upon this statement, but that he should have made inquiry from other sources. We have little sympathy with the theory always advanced in such cases that the defendant should be protected from the consequences of false statements made by him for the purpose of inducing the plaintiff to act, because the plaintiff had sufficient confidence in the defendant to believe the statement and not proceed upon the assumption that he was dealing with a man unworthy of belief. There are some cases where the fact lies so open before the plaintiff that he is unwarranted in closing his eyes to its existence and depending upon a statement made to him by the other party. We do not think that this principle applies to any case where an absolute statement of fact is made and where an investigation elsewhere would be necessary to disclose its falsity. (2 Pomeroy, Equity Jurisprudence, 891.) In such case the plaintiff may, if he choose, rely upon the representation made to him, and if he do so, the defendant cannot complain. It is true that Mr. Foley made inquiries of Mr. Patterson, another stockholder, before he made his trade, and that Mr. Patterson made a similar statement as to the secretary's report. Mr. Patterson was apparently deceived thereby also, and it all comes back to the falsity of this report. Its falsity being known by the defendant, the report was nevertheless used by him to induce the trade. That the representation operated to plaintiff's injury is too clear to require discussion. The plaintiff, therefore, was entitled to the relief awarded him by the decree of the district court, unless he in fact knew of the falsity of the representations before the defendant made the improvements upon the property by him received. On this issue the decree contains no direct finding. Our attention is called to certain testimony of the plaintiff which it is claimed establishes the fact of such knowledge. In one place, on cross-examination, the plaintiff states, being examined as to the allegation as to knowledge on the 30th of April, that he had reason then to believe that the

representations were false, but we think the clear preponderance of the evidence is that he was not in possession of actual knowledge of the fact until a much later time. That in fact when he first consulted an attorney his belief was not based on evidence sufficient then to justify legal proceedings. We do not think that he was compelled to begin his action, or even to notify defendant of his election to rescind the moment his suspicions were aroused. It was sufficient if, after being put upon inquiry, he proceeded with reasonable promptness to ascertain the facts. Our attention is also called to a point in his testimony where he states that in February he learned from the statement that there had been a loss, but this testimony, when taken with its context, refers back to the testimony of Mr. Patterson, and from that it appears that the loss referred to, as shown by the statement, was a loss shown to have occurred prior to the period to which the representations related. There are other circumstances tending to show knowledge or means of knowledge prior to the defendant's making the improvements. The questions thus presented are wholly questions of fact, and we do not feel warranted in expanding this opinion by a review of the evidence on the subject. We think that when the evidence is taken together, it shows that while the plaintiff was in possession of information prior to the time of the making of the improvements sufficient to arouse his suspicions, and sufficient even to impose upon him the duty of investigating and ascertaining the facts, he did not learn facts sufficient to demand of him action until after the improvements were completed, and that the delay in ascertaining the facts was satisfactorily explained and cannot be attributed to plaintiff's negligence.

JUDGMENT AFFIRMED.