R. A. MOORE, APPELLANT, V. C. R. SCOTT ET AL., APPELLEES.

FILED MARCH 3, 1896. No. 5983.

1. **Vendor and Vendee:** MISREPRESENTATIONS: EVIDENCE: RESCISSION. One who, as an inducement to a sale of land, in good faith states to the vendee that reliable third persons have represented the land to him as being of a certain character, and who at the same time states that he has no personal knowledge in regard to the land, does not thereby adopt such representations as his own, and rescission cannot be had merely because they prove false.

2. ——: ——: ——: ——. The statement that such third persons are reliable, being merely the expression of an opinion, is insufficient to charge the vendor in an action to rescind, at least where he honestly believed them reliable when the statement was made.

3. **Mistakes:** EQUITY: MISREPRESENTATIONS. The jurisdiction of equity to relieve against mutual mistakes is, in general, confined to cases where, because of such mistake, the minds of the parties never met, and there was therefore no contract, and to cases where the contract made was not correctly expressed by the instrument evidencing it. Relief cannot be given because of misapprehensions in regard to a collateral matter, as in regard to a fact incidentally affecting the value of the subject-matter of the contract, there being no deception or wrongful concealment.

APPEAL from the district court of Buffalo county. Heard below before HOLCOMB, J.

*R. A. Moore, pro se.*

References: *Hoock v. Bowman,* 42 Neb., 80, 87; *Mead v. Bunn,* 32 N. Y., 275; *Olson v. Orton,* 28 Minn., 36; *Harvey v. Smith,* 17 Ind., 272; *Wilson v. Yocum,* 42 N. W. Rep. [Ia.], 446; *Armstrong v. Helfritch,* 51 N. Y., 856; *McClellan v. Scott,* 24 Wis., 87;

*Simar v. Canaday*, 53 N. Y., 298; *Syms v. Benner*, 31 Neb., 593; *McKnight v. Thompson*, 39 Neb., 752; *King v. Sioux City Loan & Investment Co.*, 39 N. W. Rep. [Ia.], 919; *Galloway v. Merchants Bank of Neligh*, 42 Neb., 259; *Barnard v. Roane Iron Co.*, 2 S. W. Rep. [Tenn.], 21; *Union Central Life Ins. Co. v. Huyck*, 32 N. E. Rep. [Ind.], 580; *Fisher v. Mellen*, 103 Mass., 505; *Busterud v. Farrington*, 31 N. W. Rep. [Minn.], 361; *Billings v. Aspen Mining & Smelting Co.*, 2 C. C. A., 260; *Wheeler v. Smith*, 9 How. [U. S.], 55; *Smith v. Richards*, 13 Pet. [U. S.], 26; *Berrer v. Moorhead*, 22 Neb., 691; *Singer Mfg. Co. v. Doggett*, 16 Neb., 611; *Evarts v. Smucker*, 19 Neb., 43; *Carmichael v. Dolen*, 25 Neb., 335; *Klosterman v. Olcott*, 25 Neb., 387; *Hale v. Wigton*, 20 Neb., 83; *Holcomb v. Noble*, 37 N. W. Rep. [Mich.], 497; *Bridge v. Penniman*, 12 N. E. Rep. [N. Y.], 19; *Reeve v. Dennett*, 11 N. E. Rep. [Mass.], 938; *Baughman v. Gould*, 45 Mich., 483; *Wagner v. Lewis*, 38 Neb., 320; *Groppengiesser v. Lake*, 36 Pac. Rep. [Cal.], 1036.

*C. R. Scott, contra.*

IRVINE, C.

In January, 1888, a contract was entered into between Moore and Scott, whereby Scott assigned to Moore his rights under a contract for the purchase of 1,600 acres of land in Lincoln county. The consideration for this transaction was a conveyance by Moore to Scott of a lot in the city of Kearney, the transfer of a note for $300 made by F. H. Gilcrest & Co., a note of Moore's to Scott for $50, $5 in cash, and a box of cigars. This action was brought by Moore to rescind the contract. The Kearney Savings Bank and F. H.

Gilcrest were made defendants under allegations that the bank held the Gilcrest note and was about to collect it and pay its proceeds to Scott, the object of joining them being to obtain an injunction against the payment of the note to the bank by Gilcrest and its collection and payment of the proceeds to Scott. The Bandera Flag Stone Company intervened, claiming to be a *bona fide* purchaser from Scott of the Gilcrest note. The rights and claims of all the defendants except Scott may, however, be disregarded as the case turns upon the issues joined between Moore and Scott and the decree thereon. The court found the issues generally in favor of the defendants, and from a decree of dismissal entered upon that finding the plaintiff prosecutes an appeal.

The ground upon which rescission was sought by Moore was false representations in regard to the character of the land, ·alleged to have been made by Scott. These were, in brief, that the land was nearly all good tillable land, a little rolling, but with valleys in it, and covered with a good growth of grass; that there was not enough sand upon it to prevent its being good farming land; that water could be obtained at a depth of fifty or sixty feet, and that the land was actually worth $4.50 an acre. It may be assumed as established that the land was not in these respects as plaintiff claims it was represented. Scott, however, denies that he made such representations, but avers the fact to be that he informed the plaintiff that he had never seen the land and had no personal knowledge of its character, quality, or value, and would not be responsible for its character or quality upon that account. This was the controlling issue

presented by the pleadings, as determined by their legal effect. As determined by their volume, the issues presented were more of the character indicated by the following excerpts from the answer and reply: The answer pleads that Scott was at the time in Kearney attending court, and that "while so in attendance upon said court, said plaintiff, through the kindness of his heart and realizing that this defendant was a stranger in that part of God's heritage, kindly took this defendant in and gave him meat and drink; that this defendant was then wholly unacquainted with the ways that are dark and the tricks that are vain on the part of said plaintiff, partook of his hospitality, being captivated by his blandishments and pretexts of friendship for the stranger." This allegation is met in the reply by the following: "Admits that part of the answer where the defendant alleges that he was given meat and drink by this plaintiff, and this plaintiff alleges that it was the most expensive meat and drink he ever dealt out to friend or foe; that relying upon the former friendship existing between this defendant and plaintiff, and not realizing that he was a wolf in lamb's clothing, and supposing that he was a friend, this plaintiff invited him into his home and sat down with him in his parlor and introduced him to his family, and that many a time since he has had reason to repent in sackcloth and ashes that he ever proffered said act of friendship and kindness; that the said defendant sat at his table, broke his bread and ate of his salt and drank of his wine and smoked his Havana cigars." Disregarding such issues as these and the evidence which incidentally crept in in an attempt to support them, the case may be sum-

marized by stating that the plaintiff's evidence
tended strongly to support the allegations of his
petition; while the evidence on the part of the
defendant was equally positive to the effect that
the defendant had at all times disclaimed per-
sonal knowledge of the character and value of the
land; but that he had told the plaintiff that cer-
tain persons, whom he deemed reliable and to
whom he had been referred by his own vendor,
had made statements in regard to the land sub-
stantially similar to those which the plaintiff
charged the defendant with making. On this con-
flicting evidence the finding of the trial court must
be accepted as conclusive of the facts in favor of
the defendant; and the question is, therefore, as-
suming those facts to be in accordance with de-
fendant's testimony, did the plaintiff make out
his case?

It is true, as contended by plaintiff, that this
court has repudiated the doctrine that in order to
make out a case of deceit, it must be shown that
the defendant knew his representations to be
false. The *scienter* is not material. (*Foley v.
Holtry*, 43 Neb., 133; *Phillips v. Jones*, 12 Neb., 213;
*Hoock v. Bowman*, 42 Neb., 80; *Johnson v. Gulick*, 46
Neb., 817.) But in all of these cases it is either
expressly stated or necessarily implied that in
order to be actionable the representations must
have been made as a positive statement of exist-
ing facts. Now in this case, assuming, as we
must, that the defendant's account of the transac-
tion is correct, the fact represented was that per-
sons whom the defendant deemed reliable so rep-
resented the land to him. The defendant did not
represent these matters in regard to the character
of the land as facts within his knowledge, but he

affirmatively disclaimed all knowledge in relation thereto.   There is a class of cases where a party to a contract refers the other party to a third person for information, where it is held that in so doing he makes such third person his agent for the purpose of making the representations and binds himself by the representations so made to the other party in pursuing that recommendation.  A case of this class is *Witherwax v. Riddle*, 121 Ill., 140.   But in addition to there having been an express reference to the third person held out as knowing the facts, this third person was represented as being a reliable man, whereas in fact he was a fugitive from justice, and the decision of the court to a certain extent was based upon the fact that he was held out as a reliable man, when the defendant knew otherwise.   In the case before us the same representation was made as to the reliability of the persons from whom defendant obtained his information; but the case is distinguishable on two grounds: In the first place, when a man is held out simply in general terms as a truthful and reliable man, this must necessarily be merely the expression of an opinion; and there is here nothing to show that the reputation and character of the men named by the defendant were not as represented.   In the second place, Scott did not refer Moore to these men for information.   He merely stated to Moore what they had informed him; and there is nothing to show that he did not truthfully state it.   A case directly in point is *Cooper v. Lovering*, 106 Mass., 77.   In that case a vendor read to the vendee certain letters received from his brother, containing statements in regard to the property.   The court said: "If he intentionally misstated their contents, that

would amount to a misrepresentation of a material fact, and would come within the established definition of deceit. If he knew that the information contained in the letters was false, and that the writer was not 'trustworthy and reliable,' it would of course be fraudulent if by words or acts he induced the defendant to act and rely upon them, and to incur damage and loss by such reliance; but if he himself believed the information contained in the letters to be true, and the writer to be entitled to confidence, and if he truly and honestly stated the contents of the letters, and explained to the defendant that he had no other personal knowledge on the subject-matter, such representations on the plaintiff's part would not be fraudulent."

At some time during the trial the plaintiff asked leave to amend his petition by asking rescission on the ground of mistake. Leave to so amend was refused. The amendment tendered alleged the same representations as the original petition and averred that the contract was entered into because both parties by mistake believed the facts to be as represented. We do not think that a ground for relief from mistake was shown, and, therefore, there was no error in refusing the amendment. As we understand the law, the jurisdiction of equity to relieve against mutual mistakes does not extend to all cases where the parties to a contract at the time it was made were in ignorance of, or misapprehended some matter incidental to the subject of the contract. If that were so, and A sold his farm to B, he might rescind on its being subsequently discovered that there was a valuable vein of coal or other mineral underlying the land. As we understand it, the

mistake against which a court of equity grants relief is such as either discloses that the minds of the parties never met, and that there was, therefore, no contract; or else where the contract was defectively executed so as not to express the real agreement of the parties. (Pollock, Contracts, p. 392*; 1 Story, Equity Jurisprudence [13th ed.], sec. 140, note A; 2 Pomeroy, Equity Jurisprudence, sec. 853.) Thus, if a contract be made for the sale of land to which it turns out that the vendor had no title, relief may be had; and likewise if the conveyance misdescribed the land actually sold. In one case there may be a rescission, in the other a reformation. But where there is actually sold the land which the parties had in contemplation, a mere erroneous impression in regard to a collateral matter affecting the value of the land is not a mistake justifying the interposition of a court of equity. In *Billings v. McCoy*, 5 Neb., 187, the case made was that a number of cattle had been sold at the price of four and one-half cents per pound; that a mistake had been made in keeping account of the weight of the cattle, whereby too large a sum had been paid. It was held that the excess could be recovered back. But when this transaction is scrutinized, it was a sale of cattle at so much per pound, so that the purchaser did not get what he had paid for in consequence of the mistake. If the contract had been for the sale of so many head of cattle at an aggregate price, or at so much per head, the parties merely believing that the cattle weighed a certain number of pounds, when in fact they did not weigh so much, there certainly could have been no recovery.

There are other assignments of error, but they

relate to the admission of evidence which it is claimed was incompetent or ·immaterial.   Under the long established rule a judgment in a case tried without a jury will not be reversed on account of errors in admitting evidence where there is sufficient competent evidence to sustain the finding.

JUDGMENT AFFIRMED.