MARSHALL FIELD ET AL. V. S. P. MORSE & COMPANY ET AL.

FILED MAY 4, 1898.   No. 8054.

1. **Sales:** FALSE REPRESENTATIONS: RESCISSION: EVIDENCE.   To entitle one to rescind a contract of sale on the ground that he was induced to enter into the same through the false representations of the other party it is unnecessary to establish that the party making the representations at the time knew they were false and untrue.

2. ———: ———: ———: REPLEVIN.   Where goods are sold upon credit obtained by the fraudulent representations of the vendee as to a past or existing fact, the vendor may rescind the sale and replevy the goods within a reasonable time after the fraud is discovered.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J.   *Reversed.*

*Montgomery & Hall,* for plaintiffs in error.

*Parke Godwin* and *E. R. Duffie, contra.*

NORVAL, J.

In the latter part of March, 1893, plaintiffs sold and delivered to S. P. Morse & Co. a quantity of merchandise. In April following plaintiffs instituted this action of

replevin in the court below to recover the goods so sold. There was a trial to a jury, which resulted in a verdict and judgment for the defendants, and plaintiffs have prosecuted a petition in error.

Plaintiffs are partners engaged in the wholesale business in Chicago under the name and style of Marshall Field & Co. They predicate the right to maintain this suit upon the ground that they were induced to make the sale of the goods in controversy by reason of certain false representations of the defendants, which, it is insisted, gave the plaintiffs the right to rescind the sale and recover the goods. The defendants deny that they made any false representations to the plaintiffs. S. P. Morse had been for several years engaged in the dry goods business in the city of Omaha, but some time prior to 1893 he went out of business. In January of that year he attempted to organize a corporation in the name of S. P. Morse & Co. for the purpose of embarking in the dry goods business again in said city. Under date of January 11, 1893, articles of incorporation were prepared, which were signed by S. P. Morse, Richard T. Allen, and John M. Daugherty, published, and filed for record in the office of the county clerk of Douglas county. The authorized capital stock of the company was stated in the articles to be $40,000, in shares of $100 each. No part of the capital stock of the proposed corporation was subscribed or paid, and the officers for which provision was made in the articles of incorporation were never chosen. In March, 1893, S. P. Morse went East, where he purchased goods on credit aggregating in value more than $30,000, of which goods to the value of more than $3,500 were obtained on time from plaintiffs. Evidence was introduced tending to show that prior to the sale of the goods here in dispute Mr. Morse, for the purpose of obtaining credit, made statements to L. W. McConnell, credit-man for the plaintiffs, substantially as follows: That S. P. Morse & Co. was a corporation to be composed of S. P. Morse, J. M. Daugherty, and Robert

T. Allen; that the capital of the company was $40,000; that for the present there would be paid in $25,000; that the contribution of Morse and Allen was merely nominal; that the money was to be supplied by Mr. Creighton, connected with the First National Bank of Omaha, but as Mr. Creighton did not wish to be known in a mercantile connection, the stock would be taken in the name of his private secretary, Mr. Daugherty; that Mr. Creighton was a great friend of Mr. Morse and had arranged the lease of the building that he was going to occupy and desired him to take the adjoining building, in which case Mr. Creighton would put in more money; that his rental of the building which he had leased was $2,700 a year for three years; that he had leased part of the second floor to one Bliss at $150, and that he had leased a glove privilege on the first floor to another person at $100 a month, making an income from the subleases of $3,000, with free steam heat. There was also introduced on the part of plaintiffs evidence tending to show that they relied upon said representations, and had the same not been made, the goods in dispute would not have been sold; that while Daugherty signed the articles of incorporation he never agreed to subscribe or take any stock in the proposed incorporation, never paid any money into the concern, nor agreed so to do; that Mr. Creighton was not interested in the proposed corporation, and never promised or agreed to put any money into the business, and was not in any way associated with S. P. Morse & Co. or S. P. Morse; that, in fact, S. P. Morse & Co. had no legal corporate existence. The evidence on behalf of defendants tended to establish that no false representations of existing facts or conditions, or of past events, were made by Mr. Morse to plaintiffs, but that the statements were merely expressions of an opinion in regard to future events made in good faith. In this condition of the proofs the learned trial judge gave the following, among other instructions, to the jury upon his own motion:

"3. You are instructed that, before the plaintiffs can rescind the contract of sale and recover the goods in controversy herein, they must show you by a preponderance of the evidence the following facts: (1) That S. P. Morse, acting for the defendants S. P. Morse & Co., made the statements and representations concerning the financial condition of the defendants substantially as set out in the petition; (2) that these representations, or some one or more of them, were false; (3) that the said S. P. Morse knew them to be false at the time they were made; (4) that the plaintiffs were induced by said statements and representations to make a sale of the goods to the defendants, and would not have parted with the goods except for their belief in their truth.

"4. It is not enough for the plaintiffs to show that false statements regarding the financial condition of the defendants were made to them. They must go further and show that such statements were made fraudulently,—that is, that they, or some one or more of them, were untrue,—to the knowledge of Morse, and that he made such statements, or any of them, to induce the plaintiffs to make the sale of their goods. If Morse, whom it is claimed made the representations, did in fact make them, in form and substance as claimed by the plaintiffs, then it must further appear that he knew at the time that the facts were contrary to his statements. If he believed and had reason to believe that said representations were true, then no rescission of the contract can be had, and this action cannot be maintained.

"5. It is the theory of the law never to impute fraud where the facts and circumstances on which it is predicated may be consistent with honesty of intention. In this case, therefore, if, after a careful consideration of all the evidence, you can reasonably reconcile it with the theory of the defendant's innocence of an attempt to defraud, it will be your duty to adopt that theory rather than to impute to him an intent to wrong the plaintiffs. It is only when the acts and statements shown cannot

be reconciled with honesty of purpose on his part that you should impute to him a dishonest purpose.

"6. To constitute fraud in the purchase of goods there must be an intent on the part of the purchaser to cheat the vendor, or do some act the necessary result of which would be to cheat and defraud him. If, therefore, you find, from the evidence, that Morse did not intend by any statement made by him to the plaintiffs to cheat or defraud them, if he acted in good faith, believing what he said to be true, and in the honest conviction that the goods purchased could and would be paid for when the credit extended had expired, from the source represented, then and in such case no fraud can be imputed to him, and you must find for the defendants."

It is the settled law of this state that to entitle a party to relief on the ground of false representations it is not necessary for him to allege or prove that the party making them at the time knew they were false; in other words, whether the defendant acted in good faith or not is immaterial. (*Phillips v. Jones*, 12 Neb. 213; *Foley v. Holtry*, 43 Neb. 133; *Hoock v. Bowman*, 42 Neb. 80; *Johnson v. Gulick*, 46 Neb. 817.) Each of the foregoing paragraphs of the charge of the court was erroneous and violated the principle asserted in the foregoing cases, inasmuch as the plaintiffs' right to recover in this action was made to depend upon the question whether Morse made the representations relied upon for a rescission of the sale in good faith, believing them at the time to be true. The right to rescind in no manner depended upon the proof of scienter. The rule is that where goods are sold upon credit obtained by material fraudulent representations of the vendee, the vendor may rescind the sale and replevy the goods within a reasonable time after the discovery of the fraud. (*McKinney v. First Nat. Bank of Chadron*, 36 Neb. 629; *Work v. Jacobs*, 35 Neb. 772; *Farwell v. Kloman*, 45 Neb. 424; *First Nat. Bank of Chadron v. McKinney*, 47 Neb. 149.)

These instructions are conceded to be erroneous by

counsel for defendants, but it is argued that the judgment should not be reversed on account of the vice in the charge, for the reason that there was a complete failure to establish that Mr. Morse made any misrepresentations to plaintiffs, or to Mr. McConnell, their credit-man, of a single fact or condition then existing. It is asserted that the statements of Mr. Morse were not of matters of fact, but were the mere expressions of opinion in regard to matters wholly in the future. It is true some of the representations imputed to Mr. Morse should be classed as mere expressions of opinion and are wanting in the essential element which constitutes a fraud. But there is evidence tending to show that some of the false representations related to a present or past state of facts and not to future events alone, as that the S. P. Morse & Co. was a legal, existing corporation, and that Mr. Morse had arranged with Mr. Creighton to supply the money necessary to carry on the venture. That Mr. Morse so represented to plaintiffs is a legitimate inference drawn from the evidence, and such statements were of matters material to the contract. There being sufficient evidence to justify the rescinding of the sale and the replevy of the goods, the giving of the instructions set out in this opinion was prejudicial error, for which the judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.