VAN E. PETERSON, RECEIVER FARMERS STATE BANK, BARTLEY, APPELLANT, V. BERNARD SCHABERG, APPELLEE.

FILED JANUARY 24, 1928. No. 26168.

*Perry & Van Pelt,* for appellant.

*Claude S. Wilson* and *Albert S. Johnston, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD and THOMPSON, JJ.

GOSS, C. J.

This is an action for damages for alleged deceit. It is based on alleged false representations as to notes on which the Farmers State Bank of Bartley loaned and lost. The suit was commenced in Lancaster county by the bank while it was a going concern and was prosecuted by the receiver who was appointed by the district court for Red Willow county, where the bank was located. From a verdict and judgment for defendant, the receiver appealed.

Bernard Schaberg, the defendant, during the period involved, was president of the said Farmers State Bank, of the First National Bank of Pilger, and of the First National Bank of University Place, but lived in University Place. He had formerly lived in Pilger.

The petition alleges that the defendant as president of the bank supervised and assisted generally in the conduct of the business of the bank; that between April 23, 1919, and November 15, 1921, he mailed to the bank and direct-

ed the cashier to discount and credit to the First National Bank of University Place certain notes of several parties named, aggregating $19,800, and that they were so discounted; that renewals were made from time to time, and that the last renewals made at various dates between April 21, 1922, and January 2, 1923, crediting payments made thereon, left unpaid the several notes of Howell Rees, L. D. Ohman, Walter M. Rees, S. J. Pester, Carl Spoering, R. E. Rees, and Wm. J. Rees, amounting to a total of $22,-279.03; that the defendant, when the notes were accepted, represented by letters to the bank that the makers of the notes, with the exception of Pester (who lived at University Place), were wealthy farmers living near Pilger, and that they, including Pester, were in good financial circumstances, and that each and all of said notes were perfectly good and first class paper; that the letters were submitted by the cashier to the directors, and that like oral representations were made to the directors at or about the times the renewal notes were accepted; that the bank and its directors relied on the representations and on defendant as the bank's president to guard its interests and so accepted the notes and renewals; that the representations were untrue, the notes were not perfectly good, or first class paper, the makers were owing other creditors large sums of money they were unable to pay at the time the representations were made, all of which was unknown to the bank until about January 21, 1923; that after diligent effort plaintiff has been unable to collect on said notes, has been damaged by reason of the defendant's acts in the sum named and prays judgment therefor.

The defendant admits in his answer that the credits were given for the original notes as directed by the defendant, and alleges that in making the loans he acted in good faith and in the exercise of his best judgment; that any statements either oral or written made by him were but good faith expressions of genuine opinion as to the financial standing of the makers and were so considered by the officers and directors of the bank, to whom he disclosed all

the information he had; that the renewals were made by other officers of the bank, in transactions in which he took no part, and were made upon thorough investigation by such other officers, who relied upon their own judgment in making the renewals.

For reversal, the appellant relies on errors of the court in giving and refusing instructions, and in permitting the defendant to testify that at the time he sent the notes to the Bartley bank he believed them good.

At the outset, it is well to chart the elements necessary in such an action before damages can be recovered: First, the plaintiff should allege and prove what representation was made; second, that it was false; third, that the defendant knew it was false, or else he made it without knowledge as a positive statement of known fact; fourth, that the plaintiff believed the representation to be true; fifth, that the plaintiff relied on and acted upon the representation; sixth, that the plaintiff was thereby injured; seventh, the amount of the damages. Stetson v. Riggs, 37 Neb. 797; Foley v. Holtry, 43 Neb. 133; Scovel v. Isham, 113 Neb. 238. In explanation of the third element, as stated above, containing the alternatives charging either that the defendant knew the representation to be false or else made it without knowledge as a positive statement of a known fact, it is important to note the opinion in the Foley case above where Judge Irvine, after reciting the five elements from the Stetson case above, says: "To these requirements the courts formerly added another, to wit, that defendant must have known that the representations were false. A more accurate statement in view of the later decisions would be that the defendant must either know that the representations were false, or else they must be made without knowledge as positive statements of known facts. The rule as thus formulated practically charges the defendant with notice of the truth in all cases where he makes positive representations of existing facts." For a generation we have been committed to this rule, and in the Scovel case above it was specified as the third element to be al-

leged and proved. In final effect, the third element above stated is merely an amplification of the second. If the pleadings allege and the proofs show that one made an actionable false representation, it would follow that he either knew it was false or else he made it without knowing that it was false but as a positive statement of a known fact, and thus, for the purposes of an action, made a false statement. So, while in a case like this, it is not indispensable to state one or the other propositions of this third element in terms in the pleading or in the instructions to the jury, yet we think it a good practice to do so. It helps to clarify the case for the jury.

Appellant assigns, among others, error in the second paragraph of the court's charge to the jury. We quote it in full:

"Instruction No. 2. Law of the Case.

"In order to recover, the plaintiff must prove by a preponderance of the evidence that the aforesaid representations were made; that they were false; that the Bartley bank relied upon them and took or renewed the notes in reliance thereon and was damaged thereby.

"The defendant, while president of the Bartley bank, owed the said bank the duty of good faith and the obligation to disclose all the facts within his knowledge in respect to the financial responsibility of the makers of the notes rediscounted and renewed by the Bartley bank. The defendant, as the president of the Bartley bank, was bound only to use reasonable skill, care, and diligence in the discharge of his duties as president, and is not liable for honest mistakes made by him in inducing the bank to accept or renew notes. He is not a guarantor of the payment of the notes in question. He cannot, however, foist uncollectable notes upon his bank by misrepresentation concerning them and avoid personal liability for so doing. The fact that the bank actually suffered a loss is not, of itself, sufficient to justify you in finding that the defendant did not use reasonable skill, care and diligence in placing these notes in the bank and that he acted fraudulently

in so placing them. The point to be considered is the financial condition of the makers of the notes at the time the representations were made. You can only determine the defendant's good faith by a consideration of all the facts and circumstances in respect to the taking or receiving of the notes in question.

"If the defendant acted in good faith he is not responsible for the loss upon the notes, if he did not act in good faith he is responsible.

"He is not responsible for an honest expression of opinion; he is for a deliberate misstatement of fact."

The headnote of this instruction is criticized because to the lay mind it would indicate that the other instructions which had other headings were not the law of the case. We think it doubtful whether it would have that effect. The other paragraphs were more appropriately labeled with headings to indicate the subjects discussed in them. However, we do not commend the practice of using headnotes with charges to the jury. It requires unusual skill and watchfulness to make them inclusive of all subjects treated of, and we can imagine a case where it might mislead a jury.

The text of this instruction, however, contains the crux of the differences between the parties as shown by various assignments of error and by the arguments of counsel. The appellee's brief says: "Instruction No. 2 given by the court goes to the very heart of this case. We think, in the light of the authorities, that it states the law correctly. In the final analysis, this instruction tells the jury that the good faith, or lack of good faith, on the part of the defendant, in his capacity as president of the bank, is the real issue in this case."

In the front of the particular instruction the court correctly stated the element of falsity of the representations as a fact necessary to be proved by a preponderance of the evidence, but in the next to the last sentence he stated that if the defendant acted in good faith he is not responsible for the loss upon the notes; and in the last sentence

of the instruction he stated that the defendant is liable for a "deliberate" misstatement of fact. Under the law, while good faith may have a tendency to soften the results as to an opinion which is nevertheless erroneous, yet it does not mitigate the effect of a misstatement of a fact acted upon to the actor's injury. Whether the misstatement of that fact be deliberate or spontaneous makes no difference. Thus, the instruction was prejudicially erroneous. In addition to the cases in our court heretofore cited as bearing on this point, we call attention to *Phillips v. Jones,* 12 Neb. 213; *Moore v. Scott,* 47 Neb. 346; *Willard v. Key,* 83 Neb. 850. See, also, 12 R. C. L. 347; 26 C. J. 1109, sec. 39.

Errors are assigned based on the refusal of the court to give certain instructions requested by plaintiff on his theory of the law heretofore discussed. It would take too much time and space to discuss these in detail, as appellant has requested in his brief. Some of them were correctly stated and some were overdrawn, but the propositions of which they treated were properly charged by the court. Most of them centered around the main element already disposed of. On a retrial these questions are not likely to arise.

For the reasons given, the judgment of the district court is reversed and the cause remanded.

REVERSED.