ADDISON S. PAUL, APPELLEE, v. MELVILLE D. CAMERON ET AL., APPELLANTS.

FILED JULY 6, 1934. No. 28962.

*Wells, Martin, Lane & Offutt* and *Brome & Thomas,* for appellants.

John A. McKenzie, *contra.*

*Brogan, Ellick & Shoemaker, amici curiæ.*

Heard before GOSS, C. J., EBERLY, DAY and PAINE, JJ., and RAPER and TEWELL, District Judges.

EBERLY, J.

This is an action to recover damages on account of an alleged fraud committed by the defendants Melville D. Cameron, Richard C. Peters, and Cornelius J. Claassen in connection with the sale to plaintiff of certain bonds issued by the Keystone Investment Company. Trial had to a jury, verdict and judgment for plaintiff, and from the order overruling their motion for a new trial, defendants appeal.

The facts, from which the present litigation may be said to have developed, include the following: The Peters Trust Company was a Nebraska corporation, organized in 1907. Defendants Peters and Cameron were of the origi-

nal organizers, and were joined by Claassen in 1909. These three, with others, appear to have exercised control of the business of this corporation until its insolvency in 1930. On November 28, 1916, the Keystone Investment Company was incorporated with 2,500 shares of stock of the par value of $100. The present record does not disclose the amount paid up. On February 1, 1917, the Bee Building Company, a corporation, leased to the Keystone Investment Company the building and property then known as the "Bee Building" for 99 years, the lease being duly recorded. This lease was expressly subject to a first mortgage in favor of the New York Life Insurance Company in the sum of $250,000. So far as disclosed by the present record, the defendants at this time had no interest in, or connection with, the Keystone Investment Company. However, it also may be inferred that these defendants, together with others who with them constituted the control of the Peters Trust Company, later became desirous of securing a desirable place of business for the Peters National Bank and the trust company, which to a certain extent appear in the nature of affiliated organizations, having certain interests in common.

With this objective in view, in April, 1919, the board of directors of the Peters Trust Company, of which the defendants were members, purchased all the outstanding stock of the Keystone Investment Company for $181,000. This Keystone stock was paid for out of the treasury of the Peters Trust Company, which became the transferee and thereafter continued to be the holder and owner of the stock so purchased.

The Keystone Investment Company was thus taken over by the Peters Trust Company and its board of directors was filled by the election of the individuals then comprising the board of directors of the trust company (which included the defendants) who for that purpose were given qualifying shares of stock in the Keystone company, which they did not pay for and of which they were not the owners.

The remodeling of the Bee Building to furnish quarters for the Peters National Bank and the trust company was commenced in May, 1919, and in June, 1919, in accordance with the plan previously agreed upon by the two corporations, both wholly owned and controlled in fact by the same individuals, a deed of trust conveying the leasehold acquired under the terms of the 99-year lease was executed by the Keystone Investment Company to the Peters Trust Company, as trustee, to secure an issue of $400,000 Keystone Investment Company first mortgage real estate gold bonds, and which were thereupon sold by the trust company. It might be stated parenthetically that the applicable statutory limitation then in force as to corporate loans or liability was: "The highest amount of indebtedness or liability to which the corporation shall, at any one time, be subject * * * must, in no case, exceed two-thirds of the capital stock: Provided, however, the above limitation shall not apply to the debts for the risks of insurance companies, deposits in banks, and the notes, bonds, or debentures, of any loan or trust company organized under the provisions of this chapter, where the payment of such notes, bonds, or debentures, shall be secured by the actual transfer of real estate by trust deed or mortgage, for the payment of such notes, bonds, or debentures, which said real estate so transferred shall be of twice the value of the par value of such notes, bonds, or debentures." Comp. St. 1929, sec. 24-205.

It also appears that, after a lapse of four years, on May 17, 1923, "at a regularly called meeting of the board of directors of the Keystone Investment Company," a resolution was duly adopted reciting the previous issuance of $400,000 in bonds, known as the "Keystone Investment Company first mortgage real estate gold bonds," executed by the Keystone Investment Company, and the method by which the same were secured, and stating that the same would mature on June 1, 1924, and that it is for the best interest of the company to issue refunding bonds of like amount. Such resolution further directed "that the Key-

stone Investment Company execute bonds aggregating four hundred thousand dollars, due June 1, 1933, bearing interest from June 1, 1923, at the rate of 6 per cent., payable semi-annually, * * * and secure the same by a trust deed on the above property in favor of Peters Trust Company, trustee; said bonds to be known as Peters Trust Building refunding first mortgage real estate gold bonds, and to be used only for the purpose of retiring said Keystone Investment Company first mortgage real estate gold bonds; and for the purpose of carrying out this resolution, the president and secretary are authorized and directed to execute, in the name of the company, all bonds, trust deeds and other papers necessary and proper to execute said loan."

There is no question that these defendants, as directors, voted to adopt this resolution.

It is also true that in strict compliance with the terms of such resolution an issue of $400,000 in bonds, known as "Peters Trust Building refunding first mortgage real estate gold bonds," was thereupon executed, placed on the market, and sold by the officers, agents and employees of the Peters Trust Company, and the proceeds employed to advance the interests of the stockholders thereof, among whom were the three defendants in the instant case. It appears that in this manner the Peters Trust Company continued to deal in these bonds until in 1929. It also appears that in the last named year both corporations became wholly insolvent, and at the time this suit was instituted the stock was without value. Reference is here made to the opinion of this court in *Ashby v. Peters*, 124 Neb. 131, for a more extended recital of facts.

Plaintiff purchased five bonds of this issue, of a total face or par value of $3,200. The first of the negotiations took place in the main rooms of the Peters Trust Company offices in the Peters Trust Building. Plaintiff's testimony is to the effect that, at the time these bonds were orally recommended to him, a bond was submitted to him, which he carefully read. In company with the bond salesman he

then went over a large portion of the building which he carefully inspected. He read no circulars issued by the trust company pertaining to these bonds, and relied wholly on the terms and covenants appearing on the face and indorsed on the back of the bonds purchased, and the representations made to him, in making his deal. At the top of the face of each bond purchased, in prominent type, appeared the words, "Peters Trust Building refunding first mortgage real estate gold bonds." In the recitals on the face of each instrument appears the following provision: "This bond is one of a series of eight hundred eighty (880) bonds, numbered consecutively from one to eight hundred eighty (880) inclusive, all of like date, form, and tenor, except as to number, amount, and date of maturity, and aggregate the total principal sum of four hundred thousand ($400,000) dollars, the payment whereof, with interest thereon, is secured by a trust deed of even date herewith, duly executed, acknowledged and delivered by said undersigned to said Peters Trust Company, as trustee, conveying certain real estate, known as the Peters Trust Building (formerly Bee Building) Omaha, Nebraska."

Such bonds were executed by the Keystone Investment Company, by "C. J. Claassen" (a defendant), as president, and by the signature of the secretary. On the back of each of these bonds, in the form of an indorsement, in prominent type, are the words, "No.——— First Mortgage Real Estate Gold Bond," etc.

In substance, it is the claim of plaintiff that, accepting as true, and dealing on the basis of, the recitals set forth in and on the bonds he purchased, and relying on the representations thus made, the obligations he bought were secured by a first mortgage on the building he had inspected which was real estate; that these representations were false, and he was deceived thereby, for in truth his mortgage security was neither a first mortgage, nor was it upon real estate.

Appellants insist that a leasehold for more than a year

is "real estate." However, the identical 99-year lease here in controversy was before this court in *Ashby v. Peters, supra,* and there, in effect, this court held that for the purpose of that case, and similar controversies, such lease was not to be regarded as real estate. That determination is controlling here.

Appellants challenge the correctness and propriety of the trial court's instructions relating to the submission of the question of alleged fraud. Fraud was indeed the controlling issue. To set out these instructions at length would unduly extend this opinion.

In consideration of the vital question of fraud, it will be remembered that the bonds, containing the recitals already set forth, which plaintiff purchased, had their inception in, and were issued pursuant to and in strict conformity with, the resolution of May 17, 1923, which was adopted by the affirmative vote of each defendant. The terms and conditions therein contained were consistent with the directions given by, and in harmony with the expressed intent of, the board of directors of the Keystone Investment Company, of which the defendants were controlling members, and such bonds were sold to plaintiff, through the agency of the Peters Trust Company, as in fact being what the resolution adopted May 17, 1923, expressly directed, viz., "Said bonds to be known as Peters Trust Building refunding first mortgage real estate gold bonds."

In *Ashby v. Peters, supra,* in a case involving certain bonds forming a part of the same issue of refunding bonds now under consideration, this court held, in reference thereto: "The purchaser of a bond has a right to rely upon the representations on the face of the bond as to the security for the bond, unless, as a matter of fact, he has actual knowledge to the contrary. That question of fact is for the jury to determine."

This court reapproves the principle so announced as applicable in the present controversy. See, also, 12 R. C. L. 359, sec. 113; *Martin v. Hutton,* 90 Neb. 34; *Foley*

*v. Holtry,* 43 Neb. 133; *Brucker v. Kairn,* 89 Neb. 274; *Emanuel v. Engst,* 54 N. Dak. 141; *McCandless v. Greusel,* 103 Neb. 472.

In this state we are committed to the view that in tort actions, based on false representations, it is not necessary to allege or prove a scienter. *Gerner v. Mosher,* 58 Neb. 135. Previous to this announcement, Norval, J., in *Field v. Morse,* 54 Neb. 789, 793, employed the following language: "It is the settled law of this state that to entitle a party to relief on the ground of false representations it is not necessary for him to allege or prove that the party making them at the time knew they were false; in other words, whether the defendant acted in good faith or not is immaterial. *Phillips v. Jones,* 12 Neb. 213; *Foley v. Holtry,* 43 Neb. 133; *Hoock v. Bowman,* 42 Neb. 80; *Johnson v. Gulick,* 46 Neb. 817." See, also, *Omaha Electric Light & Power Co. v. Union Fuel Co.,* 88 Neb. 423; 26 C. J. 1131, note 15.

The defendants further challenge the correctness of these instructions of the trial court for the reason that they wholly ignored the third element of the controlling rule announced by this court in *Peterson v. Schaberg,* 116 Neb. 346, viz.: "To maintain an action for damages for false representation, the plaintiff, in substance, must allege and must prove by a preponderance of the evidence the following elements: (1) What representation was made; (2) that it was false; (3) that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact; (4) that the plaintiff believed the representation to be true; (5) that the plaintiff relied on and acted upon the representation; (6) that the plaintiff was thereby injured; and (7) the amount of the damages." However, the correctness of this contention must be determined from a reading of this *Peterson* opinion as an entirety. On the point here presented by defendants, Goss, C. J., in delivering the opinion for the court, makes the following observations: "In final effect, the third element above stated is merely an amplification

of the second. If the pleadings allege and the proofs show that one made an actionable false representation, it would follow that he either knew it was false or else he made it without knowing that it was false but as a positive statement of a known fact, and thus, for the purposes of an action, made a false statement. So, while in a case like this, it is not indispensable to state one or the other propositions of this third element in terms in the pleading or in the instructions to the jury, yet we think it a good practice to do so. It helps to clarify the case for the jury."

And, further, referring to instructions given in such *Peterson* case, Goss, C. J., says in part: "Under the law, while good faith may have a tendency to soften the results as to an opinion which is nevertheless erroneous, yet it does not mitigate the effect of a misstatement of a fact acted upon to the actor's injury. Whether the misstatement of that fact be deliberate or spontaneous makes no difference. Thus, the instruction was prejudicially erroneous. In addition to the cases in our court heretofore cited as bearing on this point, we call attention to *Phillips v. Jones,* 12 Neb. 213; *Moore v. Scott,* 47 Neb. 346; *Willard v. Key,* 83 Neb. 850. See, also, 12 R. C. L. 347."

Obviously, the arguments of defendants on the present topics are completely answered by the language of the opinion quoted, viz.: "So, while in a case like this, it is not indispensable to state one or the other propositions of this third element in terms in the pleading or in the instructions to the jury, yet we think it a good practice to do so."

It is quite apparent that in giving the instructions complained of the trial court did not commit prejudicial error.

We have given consideration to defendants' contention that they are not personally liable for their action as members of the board of directors in reference to the sale of the stock in suit. However, we find evidence in the record which, if believed, fairly establishes as a fact that they were each participants in the fraudulent transactions

in suit; that such transactions were really carried on in promoting their financial interests; and they were of the beneficiaries thereof. In this connection we reaffirm the rule announced in *Ashby v. Peters, supra,* viz.: "The officers of a corporation are responsible for the acts of the corporation, and in a suit for fraud, if fraud is proved, the law will look through the corporation to the officers who acted in the matter, and the officers who acted in the premises are proper parties defendant." See, also, *Tylee v. Illinois C. R. Co.,* 97 Neb. 646; *Farmers & Merchants Bank of Elk Creek v. Farmers & Merchants Nat. Bank of Auburn,* 49 Neb. 379.

Defendants also contend that subsequent events must not be taken into account in determining the value of the bonds in suit as of the date of the alleged fraudulent sale. And, on this ground, objections were originally made to the introduction of evidence relating to the default in payment of the rent and the forfeiture of the 99-year lease, and the subsequent insolvency of the obligor of the bonds purchased, and the fact that at the time the present action was instituted such bonds were worthless. The evidence in the record is without dispute that the bonds were purchased by plaintiff for investment, and held as such until the bankruptcy of the Keystone Investment Company and likewise of the Peters Trust Company culminated. Under these circumstances, the approved rule appears to be that, in ascertaining the measure of damages, where bonds have been sold by fraudulent representation for the purpose of investment, it is competent to take into consideration, in ascertaining the true and intrinsic value of such bonds, subsequent events such as the history of the company, the winding up of its affairs and all other facts and circumstances throwing light upon the real and true value of the bonds at the time the same were sold. 12 R. C. L. 453, sec. 199; *Hindman v. First Nat. Bank,* 112 Fed. 931; *Cramer v. Overfield,* 115 Kan. 580; *Whiting v. Price,* 172 Mass. 240; *Morrow v. Franklin,* 289 Mo. 549; *Hotaling v. Leach & Co.,* 247 N. Y. 84;

*Addis v. Swofford,* 180 S. W. (Mo.) 548; 57 A. L. R. 1142, note.

We have carefully examined the evidence in the record, and while on many points it is conflicting, still, if believed, the judgment for the plaintiff is amply sustained thereby. It follows that, no prejudicial error appearing, the judgment of the district court is correct, and it is

AFFIRMED.