NELLIE E. SAFFER, APPELLANT, V. JOHN SAFFER ET AL., APPELLEES.

274 N. W. 479

FILED NOVEMBER 12, 1937. No. 29996.

*L. W. Setz,* for appellant.

*John E. von Dorn* and *Fradenburg, Webb, Beber, Klutznick & Kelley, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and KROGER, District Judge.

MESSMORE, J.

This cause now comes before this court on reargument.

Plaintiff seeks to quiet title to certain real estate in Omaha, Nebraska, which she claims under a tax deed. The defendants are the life tenants and remaindermen, and among the remaindermen is John Saffer, the husband of the plaintiff.

Sebastian Saffer died in 1923, leaving property which he devised to his wife, Emma Saffer, for life, and the remainder to his three sons, John, Frank and Harry. Harry

Saffer has died since the commencement of this action, and it was revived against his heirs. Emma Saffer, the widow, elected to take under the will and occupied the premises in question for about a year after her husband's death. She then moved to Chicago where she took up her abode with her son John. Frank Saffer thereafter occupied the premises, sublet part thereof, and, after making certain deductions, forwarded the balance of the rents to his mother. It is claimed by Emma Saffer and Frank Saffer that John Saffer received a portion of the rents. The 1928 taxes were not paid, and D. Z. Mummert, of Blair, Nebraska, purchased the taxes, and a certificate of tax sale was issued to him. In addition thereto he paid the subsequent taxes up to November 5, 1931, when the certificate was assigned to John Saffer.

The plaintiff, who had been acquainted with John Saffer for many years, and which acquaintanceship was renewed in January, 1931, was Miss Nellie E. Bott. John Saffer stated to plaintiff, to whom he was married shortly afterwards, that he and his mother owned a piece of property in Omaha which had been sold for taxes; that a tax buyer had purchased the same, and that he, John Saffer, wished to redeem; that if the plaintiff cared to put up the money and pay for the tax certificate the property would be hers and would in part compensate her for money previously advanced by her to John Saffer, in the sum of $10,000. The amount of the certificate in question was nearly $600. Miss Bott, now the plaintiff, complied with the request of John Saffer, loaned the money and eventually obtained the tax certificate indorsed from John Saffer to her, but which originally was indorsed to John Saffer. She kept possession up to the time that John Saffer finally sent the tax certificate to an attorney, R. E. Svoboda, for the purpose of obtaining a tax deed. Mr. Svoboda, in turn, obtained a tax deed, as directed by John Saffer, for the plaintiff, and until this time apparently has retained possession of the tax deed, not having recorded it. John Saffer and the plaintiff were married January 31, 1932. The tax cer-

tificate was assigned by John Saffer to plaintiff, his wife, July 20, 1932, using her maiden name, Nellie E. Bott. The tax deed was issued to the plaintiff on November 13, 1933, and is the basis of this action.

The substance of the finding and decree of the district court, pertinent to this case, is as follows: "That the defendant John Saffer was not acting as the agent or representative of the plaintiff at the time he obtained the assignment of the tax certificate * * * from the purchaser of the said property at tax sale, but said defendant was acting for himself as heir of Sebastian Saffer, deceased, and in a representative capacity and for and on behalf of his mother, the defendant Emma Saffer, also an heir of Sebastian Saffer, deceased; and the assignment of said tax certificate obtained by him by assignment to him constituted a redemption of the property from tax sale for the use and benefit of the defendant Emma Saffer and all heirs of Sebastian Saffer, deceased, and operated to pay the tax against the property and not to create a lien thereon, and that the funds used by the defendant John Saffer to redeem said property were advanced to him by the plaintiff in his individual capacity and not as agent or representative of the defendant Emma Saffer. That the defendant John Saffer, during the period when said property was sold for taxes * * * and when he took an assignment of said tax certificate and when he reassigned the same to the plaintiff, as representative of the defendant Emma Saffer, received sufficient funds derived from said property to pay all taxes then becoming due or delinquent against it."

It is fundamental that, ordinarily, it is the duty of the life tenant, and not of the remainderman, to pay the taxes. 21 C. J. 955. It is also true that a "tenant in common cannot add to or strengthen his own title by purchasing at a tax sale or by purchasing from a stranger who purchased at a sale. The purchase of the outstanding tax title for the entire property by one cotenant operates as a payment of the tax and an extinguishment of the tax title,

amounting to no more than a redemption until ouster or notice to his cotenants that his possession is exclusive, and a deed to him as purchaser simply acts as a discharge of the taxes assessed on the land. Such purchase or extinguishment inures to the benefit of all of the tenants in common and the purchasing tenant holds the title or interest acquired in trust for the benefit of his cotenants." 62 C. J. 467.

It might be well at this juncture to set out the relationship between the remainderman John Saffer, defendant, and the life tenant, Emma Saffer, his mother, so far as this property is concerned. The record is replete with statements of this relationship. Mr. Svoboda testified that, as attorney, he represented some of the Saffers in other litigation; that he handled negotiations for John Saffer in procuring the tax deed and handled correspondence with John Saffer; that he had personal contact with John Saffer and Emma Saffer, and that John Saffer represented that he was taking care of his mother's affairs, and that Mrs. Emma Saffer lived with her son John a great deal of the time; that he conveyed the information to John Saffer that the taxes were not paid on the premises in question and wrote to him about this matter; that, in fact, he tried to arrive at a compromise with Mr. Mummert for John Saffer; that he did not communicate with the plaintiff in this case relative to this real estate. Emma Saffer testified: "I told Jack, I said you owe me so much money; I have got to pay these taxes, and about two or three weeks after that he came and said, 'Mother, your taxes are paid.' I said, 'Fine.'" She further testified that John collected the rents for the property in Omaha for the time that she lived with him, and did not turn the rents over to her; that she talked with John about taking care of and supervising the property and collecting the rents, and that she trusted him. Mrs. Lenore Passoth lived in the Omaha property, collected rents and sent the amount thereof to defendant John Saffer, which, less the expense, amounted to $1,483.61. She testified that John Saffer instructed her

to remit the rent only to him and finally paid her a commission for collecting rent; then terminated her service.

It will readily be seen from the foregoing evidence that John Saffer was acting for and in behalf of the life tenant. The transactions, conversations and correspondence had by him with the various witnesses are fully indicative of this fact and create, we believe from the evidence, the relationship of principal and agent, in so far as the life tenant is concerned. This being true, and defendant John Saffer having collected more than a sufficient amount to have paid the taxes on the real estate in question, he could and should have paid the taxes for the life tenant without borrowing from the plaintiff. He borrowed from her without any apparent knowledge, on the part of his principal, the life tenant, until, as reflected in the record, plaintiff told Emma Saffer, the life tenant, nine months before this action was commenced when John and the plaintiff were living on a farm in Minnesota, that plaintiff had advanced the money for payment of the taxes. At most, the loan from the plaintiff to her husband was a personal obligation and, under the circumstances as indicated by the evidence, was an obligation in which the life tenant and the other remaindermen and heirs at law had not acquiesced, and of which they apparently had no knowledge. Therefore, the court's decree, as hereinbefore set out, is correct.

"Agency may be implied from the words and conduct of the parties and the circumstances of the particular case evidencing an intention to create the relationship." 2 C. J. S. 1045.

In *Goldfein v. Continental Ins. Co.*, 125 Neb. 112, 249 N. W. 78, it was held: "In establishing agency, it is necessary to take into consideration the facts and circumstances in the case, the relations of the parties, what they did, their usual course of dealing, what instructions were given, if any, the conduct of the parties generally, and the nature of the transaction."

The defendants plead fraud. A careful reading of the evidence in this case shows the record to be free from

fraud, so far as this plaintiff is concerned; nor does it show that there is any connivance on the part of John Saffer, defendant, and this plaintiff. Fraud is never presumed, but must be proved by the person alleging fraud by a preponderance of the evidence.

Section 77-2026, Comp. St. 1929, reads as follows: "The deed so made by the county treasurer shall be under his official seal of office and acknowledged by him before some officer authorized to take the acknowledgment of deeds, and when so executed and acknowledged shall be recorded in the same manner as other conveyances of real estate, and when so recorded shall vest in the grantee, his heirs and assigns, the title of the property therein described."

The nature of the transaction suggests that a requirement that the tax deed be recorded before, in effect, vesting title serves a well-considered public policy. It is plain that the title to the lands in suit must be vested in plaintiff before she can maintain an action to quiet the same. The above statute was cited for the first time in the motion for rehearing, and the writer of the former opinion did not have the benefit of a brief on this point when he wrote his opinion; nor was his attention challenged to this point on oral argument. Nevertheless, the point was presented to the trial court and expressly decided by it, and it appears that, unless a present title vests in plaintiff, she is entitled to no relief, in view of the form of the action which she has instituted.

The law applicable to this provision of the statute is stated in an early Vermont case, *Chandler v. Spear*, 22 Vt. 388, cited in the Nebraska case of *Brokaw v. Cottrell*, 114 Neb. 858, 211 N. W. 184. The Vermont case holds: "When the statute, under which land is sold for taxes, directs an act to be done, or prescribes the form, time and manner of doing any act, such act must be done, and in the form, time and manner prescribed, or the title is invalid; and in this respect the statute must be strictly, if not literally, complied with." This court in the body of the opinion in *Brokaw v. Cottrell, supra,* makes this statement relative

to the Vermont case: "While this Vermont case has not been referred to by us in our previous opinions, we have adopted the rule therein announced, and consistently followed the same when such question has been presented to this court."

There are other questions presented by the appeal which are not necessary for us to determine herein, and for the reasons stated in this opinion our former opinion is withdrawn and the judgment of the trial court is

AFFIRMED.