RALSTON PURINA COMPANY, APPELLANT, V. ORVAL IIAMS, APPELLEE.

10 N. W. (2d) 452

FILED JULY 9, 1943. No. 31317.

*Earl Hasselbalch* and *Cottrell Fox*, for appellant.

*William Keeshan* and *Raymond P. Medlin, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is an action on a contract, to recover balance due thereon in the amount of $1,253.65. The cause was tried to a jury, resulting in a verdict for the plaintiff in the sum of $359.89. From judgment entered on the verdict and the overruling of the motion for a new trial, plaintiff appeals.

Plaintiff's amended petition alleged, in substance, that on or about July 29, 1936, defendant made, executed and delivered to plaintiff his written contract for the purchase of merchandise, which he received. The amended answer and counterclaim acknowledged the purchase from plaintiff of 42 tons of "Hog Fatena Meal," to be sold to defendant by open finance; affirmatively alleged that the contract was ob-

tained by fraud and misrepresentation in that the agents of the plaintiff represented to defendant falsely and fraudulently that hog Fatena was a tested food, guaranteed and warranted by the plaintiff to feed out on the basis of 300 pounds of meal to 100 pounds of pork, and that no other feed would be required; that plaintiff's agents demonstrated through advertising and radio announcement, wherein the warranty was made by plaintiff directly to defendant, who relied upon the false representations and believed them to be true; that, so relying and believing, defendant was thereby induced to execute and deliver the contract; that plaintiff knew the representations to be false and made the same with reckless disregard of whether or not they were true, when it should have been known by plaintiff that the representations were false and made with the purpose and intent that defendant should act and rely thereon; acknowledged receipt on August 26, 1936, of 150 sacks of hog Fatena to be fed to 140 hogs owned by defendant, which were weighed previous to the feeding of the hog Fatena and averaged 50 pounds per head; that the first shipment did not last to exceed 20 days, and defendant thereafter received other feed from the plaintiff; that the product did not show the gain on the hogs, as represented, and in the month of October, 1936, plaintiff's agent called on defendant for the purpose of making a satisfactory adjustment, and plaintiff failed to deliver the meal, pursuant to the adjustment, and the amount so delivered was insufficient for the purpose, making it necessary for the defendant to feed, in addition, 200 bushels of barley, valued at $160; two hundred dollars' worth of buttermilk, and 100 bushels of seed corn at $3 a bushel, and, in addition, skim milk of the value of $10, totaling $720 in expenditures directly caused by the fraudulent act of the plaintiff, and which sum included loss by death of six hogs of the value of $50; prayed that the proper deductions be allowed and, in addition, damages in the amount of $41.07. The plaintiff's reply was, in effect, a general denial, and a specific denial of any warranty, express or implied; alleged that in December, 1936, plaintiff

delivered to defendant, without charge, approximately 11 tons of its product in complete settlement and in accord and satisfaction of any claim the defendant had; prayed for dismissal of defendant's counterclaim and that plaintiff recover in accordance with its amended petition.

The contract provided for the purchase of 42 tons of hog Fatena meal in the amount of $2,234.40, to feed 140 hogs, to be marketed through the O. K. Commission Company, Omaha, Nebraska, on or about April 1, 1937. In addition there was signed a statement by the defendant, listing 140 hogs of the value of $700, average weight 40 pounds, condition good, to be marketed April 1, 1937.

Defendant's counterclaim is based on fraud. Fraud is never presumed but must be proved by a preponderance of the evidence by the person alleging it. *Ralston Purina Co. v. Cox,* 141 Neb. 432, 3 N. W. (2d) 748; *Foley v. Holtry,* 43 Neb. 133, 61 N. W. 120; *Saffer v. Saffer,* 133 Neb. 528, 274 N. W. 479. This rule of law is well settled in this state, and other citation of authority on this point is unnecessary.

The first assignment of error is the insufficiency of the evidence to prove defendant's counterclaim, in accordance with the above stated rule. A review of the evidence discloses the following:

The defendant testified that some time in July, 1936, he first heard of the Ralston Purina feed over the radio from various broadcasting stations, one of which he designated. He did not remember any part of the broadcast, but recalled a statement made therein, that the feed was supposed to produce 100 pounds of pork by the use of 300 pounds of feed. Some time later he talked to a local dealer, who informed him that the feed was supposed to be guaranteed "and it just took three hundred pounds of that to make one hundred pounds of pork." The defendant purchased the product on that basis. He fed his hogs in a self-feeder and after it was gone new feed was given to the hogs, which they would not eat. It developed that this feed was defective in that it did not contain the proper amount of molasses. During this time buttermilk was also fed. The de-

fendant lost six head of hogs. He complained, and subsequently a representative of plaintiff called on him, taking samples of the meal, sending them in for examination, and agreeing to adjust the matter by furnishing an additional amount. According to the figures, 180 sacks would be the necessary amount. The defendant had some of the product on hand, and 220 sacks more, each weighing 100 pounds, were delivered to defendant free of charge.

With reference to the adjustment there is a dispute. Eleven tons of additional feed were furnished by the plaintiff. The defendant claimed that he was entitled to 19 additional tons. The local merchant testified that the settlement required 13 or 14 tons. The defendant marketed some hogs at different times, and from the sale thereof paid the plaintiff on the contract the sum of $980.75. The hogs so marketed had been fed on plaintiff's product exclusively for three and a half months, with the exception of buttermilk and skim milk. Eighty head sold on the market brought $1,339.59. The defendant on cross-examination testified that he had agreed with the representative of the plaintiff and was satisfied with the figures as to the amount of feed to be furnished. No complaint was made by the defendant until after all of the hogs were sold.

The local merchant testified that he sold a great quantity of plaintiff's product, receiving a commission therefor, and was in business for himself, not employed by the plaintiff; that he sold the feed on the basis that 300 pounds of it would produce 100 pounds of pork; that he had been so informed by a representative of the plaintiff and by letter that the product offered great possibilities when sold on such a basis, and he stated that such representation was a guaranty as to what it would do. He had also heard broadcasts to such effect in an advertising campaign put on by plaintiff, and that plaintiff's feed would effect a saving over the feeding of corn.

The local representative of plaintiff testified that the representation made as to the quality of the product would be taken from the records on the plaintiff's experimental farm

where hogs had been fed, and showing approximately the amount it took under certain favorable feeding conditions to accomplish certain results; that no positive guaranty as to what the product would do was made. The witness testified to the conversations had with the defendant about the feed, the taking of the samples, that the meal was defective, lacked molasses, and that he made an adjustment to the complete satisfaction of the defendant by furnishing him the additional amount, finally, of 220 sacks, and that no complaint was made by defendant until some considerable time after the hogs were sold; that the feeding and results thereof depended upon the condition of the hogs from date of birth, the manner in which the feeding was done, whether in self-feeders or by hand, to obtain uniform gains, or whether some of the product was wasted, and conditions generally. The foregoing constitutes the material evidence from which the defendant contends he has proved fraud and misrepresentation.

Defendant accepted the feed, fed it, marketed 80 head of hogs,—the first shipment averaging 227 pounds each, the last 195 pounds each,—for which he received the amounts as set forth in this opinion. For the remaining 60 head of hogs he was furnished 11 tons of meal; he had some of the feed on hand; he was satisfied with the settlement, except that he claimed to be entitled to eight tons more than furnished. The number of tons to which he was entitled was disputed; he made no complaint until after he had marketed all of his hogs. The evidence clearly demonstrates that no fraud was practiced by the plaintiff in procuring the contract.

It is clear, under the facts and circumstances in the instant case, that there was no statement or alleged representation made upon which the defendant had a right to act. At most, the statement attributed to the plaintiff was merely dealer's talk, puffing and praising its goods, which is permissible. The following authority applies:

"In order for an express warranty to exist, there must be something positive and unequivocal concerning the thing

sold, which the vendee relies upon, and which is understood by the parties, as an absolute assertion concerning the thing sold, and not the mere expression of an opinion; representations which merely express the vendor's opinion, belief, judgment, or estimate do not constitute a warranty. Dealer's talk is permissible; and puffing, or praise of the goods by the seller, is no warranty, such representations falling within the maxim *simplex commendatio non obligat.*" 55 C. J. 688.

The record discloses that the plaintiff made a motion for a directed verdict for the amount prayed in its amended petition, and when this motion was overruled plaintiff moved for judgment in the amount prayed in the petition, less eight tons of feed. This motion was overruled. The evidence respecting the settlement for additional feed which the plaintiff and defendant elected to make is controverted as to the amount of additional feed that the plaintiff should furnish the defendant.

On this issue the cause is remanded for further proceedings to determine the credits to which the defendant is entitled, if any.

REVERSED.

PAINE, J., dissenting.

I regret that I find myself in absolute disagreement with the majority of the court on both the evidence and the law set out in the opinion finally adopted in this case.

In August, 1936, when this case originated, the farmers in Boone county had suffered repeated droughts, and were desperate to salvage something; at least, that was the condition of the renter who is defendant in this case.

The plaintiff corporation was a very extensive manufacturer of stock foods, and the defendant heard their repeated pleas and promises over his radio.

May we examine the evidence on this point. The defendant testified that he first heard plaintiff's announcement of this hog feed over KMMJ radio station of Grand Island, and other radio stations; that it was also published in his county paper, and that the statement over the radio which

he heard, and as published in their advertising, was that if he would feed 300 pounds of this feed to his hogs they would gain 100 pounds of pork. After hearing this radio broadcast he called upon Joe Niemeyer, who handled the plaintiff's feed, and Mr. Niemeyer told him the chief selling point was that three sacks of feed of 100 pounds each would produce 100 pounds of pork, and said that he got that statement from a letter from Roscoe Shay, the representative of the defendant company, who got him to handle this feed, who told him that they guaranteed that 300 pounds of feed would make 100 pounds of pork, and that was the chief sales talk, and was the same thing that he had heard over the radio.

On these definite representations he purchased 42 tons of this feed at $53.20 a ton, or a total of $2,234.40. Defendant agreed that his 140 hogs were free and clear of all liens, and agreed to market them through the O. K. Commission Company of Omaha, and directed them to deduct $17 a head for each hog sold through the company until the $2,234.40 was paid in full.

The plaintiff, with its usual caution, secured a financial statement, showing that the defendant was a renter, who was on a farm of 380 acres; that he owned 140 hogs, worth $700, 14 horses, 75 cattle, 10 milk cows, and set out that the cattle were mortgaged for $2,000; that the hogs had been vaccinated against cholera. It states that he has no corn on hand, and in answer to the question, "If present supply of corn is insufficient to feed out the stock what provision will be made to secure more?" the answer written in was, "Hog Fatena," showing in this written financial statement that the defendant was relying entirely upon the promises made by plaintiff that with the hog Fatena no other feed was required.

The defendant testified that he first received 150 sacks out of a car of this feed from Joe Niemeyer, and that that first feed was good feed, and that he fed it in a self-feeder, but when he got the second lot of it the hogs would not eat it, but would just follow him around and squeal, and that

the buttermilk he was giving them was all that was keeping them alive; that they then cleaned out one end of the self-feeder and dumped in a sack of the first feed and the hogs just could not get to it quick enough, but they would not eat the second lot of feed in the other end of the feeder at all.

Defendant complained to plaintiff's agent, Joe Niemeyer, who came out and looked at it, and while they were trying for several days to get plaintiff's traveling agent to come out and see what was the matter with the second lot of feed six of the hogs died. Defendant then called Dr. Score, a veterinarian, out to see if the hogs had worms or something else was the matter with them. Dr. Score examined them, and said, "It is nothing, only your feed. If you don't get some feed other than what you have got, your pigs will all die." Then Leonard Martin, an agent of the company, came out with Joe Niemeyer, local agent, and took out a sample of the second lot of feed and sent it in for examination, and the agent admitted the feed was not the kind of feed it was supposed to be, and he agreed to furnish 380 bags in the place of this poor feed, but defendant never received but 220 bags in the place of the poor lot of feed, because agent Niemeyer had to stand the freight out from Omaha, which plaintiff company would not pay, so Niemeyer refused to ship out the balance of 160 sacks of 100 pounds each, and all the time defendant was compelled to use other feeds which he had to buy. The plaintiff company had also offered $2 a ton reduction in price if the feed was all taken within a 60-day period, which allowance they failed to credit in their petition.

Joe Niemeyer testified that he took Mr. Martin, representing the plaintiff company, out to get samples of the feed which the hogs would not eat, and he testified that Mr. Martin admitted that just one of the sacks was good feed and the others showed that they were defective, and so Martin agreed to send 380 sacks free, but plaintiff never did furnish the 380 sacks, as it had agreed to do.

Leonard Martin, a witness for the plaintiff, testified that

on the samples which he sent in he got a report from their laboratory that the feed lacked a little molasses, which made the feed less palatable. This was the only attempted explanation of the reason that the hogs absolutely refused to eat any of the defective feed, but would just squeal, and that six died.

This brings our inquiry to the real question upon which the decision in this case must turn. It is the alleged error in refusing to give the following instruction tendered by plaintiff: "You are instructed that, as a matter of law, statements of plaintiff's salesmen as to the number of pounds of Fatena that were required to produce one pound of pork shall not be construed as a warranty or guaranty of the plaintiff that the feed would produce pork on the basis stated by such salesmen, and that such salesmen's statements are what is known as selling talk or 'puff,' and that the defendant is not entitled to recover damages on his cross-petition by reason of these salesmen's statements as to what the feed would do."

As to the law on this point, the plaintiff cites us to many cases to the effect that the rule that parol evidence is admissible to prove that contemporaneously with, or preliminary to, the execution of a written contract the parties entered into a distinct oral agreement on some collateral matter or as a condition on which the performance of the written contract is to depend, does not apply where the written contract is complete in itself and unambiguous, and where it expresses a contractual consideration.

I cannot see the application of these cases, when the offer made by plaintiff repeatedly in its radio advertising and in newspaper advertising was the definite promise in each case that, if a hog owner would feed three pounds of its feed as directed, it would produce a pound of pork, so the contract on which defendant agreed to pay out some $2,234.40 was the oral contract, and the little slip he signed, but which was not signed by any one for the plaintiff, telling how many tons it would take to carry through his feeding operations on their offer, and the property statement he

signed, were but supplementary items to the main contract, which was oral, and was a definite and repeated offer that three pounds of their feed would produce one pound of pork. Plaintiff relies on the case that "A mere expression of opinion or belief, a bare affirmation, not intended or understood as a representation of the quality or character of goods, does not amount to a warranty." *Patrick v. Leach,* 8 Neb. 530, 1 N. W. 853.

The plaintiff also relies upon our recent decision in which this same company won a case in the same county on the same hog feed. It is *Ralston Purina Co. v. Cox,* 141 Neb. 432, 3 N. W. (2d) 748. However, that case held that the evidence had failed to show that defendant had relied upon any representations made by plaintiff, or that the contract was induced thereby. There is another piece of evidence in the *Cox* case on which the decision might well have rested. Mr. Cox wrote the plaintiff company, in response to their dun for the balance due: "Well I received your letter as you can see and as to giving you more security nothing doing. I told Martin (a representative of the plaintiff) that if you fellows let me alone till I got the money I would pay."

The evidence in the *Cox* case falls far short of the definite, positive assertions made by plaintiff in the case at bar, for here the evidence is convincing as to the specific representation made, and under the law I firmly believe that the defendant was justified in relying on the positive statements of fact made over the radio, and in newspapers, and by plaintiff's representatives, especially where an investigation would be required to discover the truth. See *Perry v. Rogers,* 62 Neb. 898, 87 N. W. 1063.

In the instant case, the defendant, relying on the representations made by plaintiff, was damaged thereby, and the money paid by him was retained by plaintiff, who is responsible for the representations, made in its advertisements by radio, by newspaper, and by word of mouth, that three pounds of this hog Fatena feed would produce one pound of pork. That definite, positive statement so made by

the plaintiff was believed and relied on by the defendant, and plaintiff seeks to avoid by the claim that it was just a clever piece of "puffing," which no farmer should have believed was honestly made. See *Tylee v. Illinois C. R. Co.,* 97 Neb. 646, 150 N. W. 1015; *Western Union Life Ins. Co. v. Mayhew,* 135 Neb. 6, 280 N. W. 250.

"While the soundness or policy of the rule permitting warranties to be based on affirmations by the seller as to the quality or condition of the chattel sold has been vigorously protested, it is generally recognized, especially in the more modern cases, that such affirmations may constitute a warranty, if so intended by the parties and relied on by the buyer as such." 24 R. C. L. 168, sec. 442.

A representation that seed rice was free from red rice and of good, sound, plump grains would be claimed, on the theory of plaintiff in the instant case, to be mere "puffing" talk, for which there was no liability, but the North Carolina court held that this constituted a warranty that the seed would grow, and held seller liable for the breach of warranty. *Reiger v. Worth,* 130 N. Car. 268, 41 S. E. 377, 89 Am. St. Rep. 865.

It has been held that seller's newspaper advertisement was in the nature of an implied warranty to subsequent purchasers who relied thereon. *Kitchin v. Oregon Nursery Co.,* 65 Or. 20, 28, 130 Pac. 408, 132 Pac. 956.

It is said that representations of the seller may become a part of the contract and constitute an express warranty, for the breach of which the seller will be liable in damages, and this is supported by numerous cases. 28 A. L. R. 992, Ann.

In my opinion, the trend of recent decisions is to hold stock feed companies to their advertising promises.

Representations in a pamphlet published by a company which manufactured and sold stock powder, presenting the merits of the same and the benefits of its use in the treatment of diseases of hogs, which pamphlet it was intended should be placed in the hands of prospective purchasers, were held in *Economy Hog & Cattle Powder Co. v. Comp-*

*ton*, 132 N. E. (Ind. App.) 642, to be more than mere expressions of opinion or dealer's talk, but representations of fact, which, if false and relied upon by a purchaser to his injury, would amount to a fraud rendering the seller liable to the injured party.

The defendant's claim in the instant case is supported by the evidence that the radio advertisements sponsored by the plaintiff stated that 300 pounds of hog Fatena would produce 100 pounds of gain, and this evidence is uncontradicted by any evidence of the plaintiff, and also plaintiff does not attempt to deny that it authorized its agents to make similar statements, and in fact encouraged them to make the same statement as was broadcast over the radio, and this statement, relied upon by defendant, proved to be false in his case.

In my opinion, the trial court was right in refusing to give the instruction, submitted by the plaintiff, that such positive representations are mere puffing talk.

I think the disputed questions of fact were properly submitted to the jury, and that the judgment entered on the verdict returned should be affirmed, and that this court should set out the law of Nebraska to be as follows:

(1) When a stock food company advertises by radio, and in newspaper publications, and by its agents orally, that if an owner will feed his hogs three pounds of its feed, as directed, it will produce one pound of pork, this constitutes a definite offer of a positive statement of fact, which if accepted makes a binding contract.

(2) The defendant, having relied upon this specific promise, and having ordered 42 tons of such feed, at a cost of $2,234.40, and having been damaged by his reliance upon the representations which were false, is entitled to recover such damages as he can prove.

(3) Neither the little sales slip ordering the feed, nor the financial rating slip furnished by the farmer, constituted the contract between the parties.

(4) Affirmations made by the seller as to the quality and effect of using its hog feed may constitute a warranty, if

so intended by the parties, and relied upon by the buyer as such.

(5) Representations over the radio, and in newspapers, and repeated by authorized agents, as to just what definite results will follow the feeding of a hog feed, are more than mere expressions of opinion, or dealer's talk, but are representations of fact, which, if false and relied upon by a purchaser to his injury, will amount to a fraud, rendering the seller liable to the injured party.